**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| MICHAEL E. BEATTY, M.D. d/b/a THE SOUTHWESTERN ILLINOIS PLASTIC & HAND SURGERY ASSOCIATES, individually and as the Representative of a class of similarly-situated persons, | ) ) ) ) ) | Case No.  3:17-cv-01001 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Hon. Nancy J. Rosenstengel |
| | ) | |
| ACCIDENT FUND GENERAL INSURANCE COMPANY, *et al*. | ) ) | |
| | ) | |
| Defendants. | ) | |

**DR. BEATTY'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.    DEFENDANTS HAVE A STATUTORY AND CONTRACTUAL DUTY TO PAY INTEREST ON LATE PAYMENTS—A DUTY REITERATED BY THE ILLINOIS DEPARTMENT OF INSURANCE ............................................................................ 5

      A.    The Plain Language of the IWCA Unequivocally Places the Obligation to Pay Interest on Defendants ............................................................................ 6

      B.    *Medicos* Does Not Involve an ICFA Claim; However, *Medicos* Does Explain Why an ICFA Claim is Appropriate Given the Consequences of Defendants' Illegal Scheme ..................................................................................... 8

      C.    Defendants' Unanimous Decisions to Not Pay Interest, Not Abide by the IWCA, Not Abide by Their Policies, and Ignore the DOI Bulletin Undermine Public Policy .......................................................................................... 10

II.   DR. BEATTY DOES NOT BRING A CLAIM UNDER THE IWCA ........................... 12

III.  THE ICFA PROVIDES AN INDEPENDENT CAUSE OF ACTION ........................... 16

      A.    The ICFA Does Not Require an Underlying Statutory Right of Action .............. 16

      B.    Dr. Beatty Did Not Bring an IWCA Claim ........................................................ 18

      C.    ICFA Claims are Not New or Novel ................................................................... 19

IV.   DR. BEATTY STATES AN ICFA CLAIM ............................................................. 20

      A.    Dr. Beatty's Allegations Satisfy the Consumer Nexus Test. ............................... 20

            1.   Defendants' refusal to comply with the IWCA, the DOI directive, and their own policies are unfair practices directed to the market generally ............................... 21

            2.   Defendants' refusal to comply with the IWCA and DOI directive implicates consumer protection concerns ............................................................... 22

                 a. There is an undeniable link between doctors and patients ................................. 23

                 b. Defendants' failure to pay interest concerns consumers generally and implicates consumer protection concerns. ........................................................... 24

                 c. Consumer interest will be served by making Defendants pay the interest mandated by the legislature and by their own insurance policies, as recognized by the Department of Insurance ................................................................... 26

i

B.      Dr. Beatty States a Plausible Unfair Practices Claim ............................................ 28

    1.   Defendants' Conduct Offends Public Policy as Expressed by the Legislature in
         the IWCA and the DOI in its directive to Defendants. ........................................ 29

    2.   Defendants' Conduct Is Immoral, Unethical, Oppressive, and Unscrupulous. .... 34

    3.   Defendants' Conduct Causes Substantial Injury To Consumers ......................... 35

V.      DR. BEATTY STATES A CLAIM FOR INJUNCTIVE RELIEF ................................ 37

CONCLUSION ..................................................................................................................... 39

**Cases**

Batson v. Live Nation Entm't, Inc.,
    746 F.3d 827 (7th Cir. 2014) ....................................................................... 34, 35

Bonaguro v. Cty. Officers Electoral Bd., et al.,
    634 N.E.2d 712 (Ill. 1994) ............................................................................... 6, 8

Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Tr., Series 2003-1,
    787 F. Supp. 2d 747 (N.D. Ill. 2011) ................................... 16, 17, 18, 29, 31, 32, 33

Burton v. Hodgson Mill, Inc., No. 16-cv-1081,
    2017 WL 1282882 (S.D. Ill. 2017 April 6, 2017)..................................................... 37

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983).......................................................................................... 37

Cont'l W. Ins. Co., Inc. v. Knox Cty. EMS, Inc.,
    52 N.E.3d 558 (Ill. App. Ct. 2016) ..................................................................... 6

CustomGuide v. CareerBuilder, LLC,
    813 F.Supp.2d 990 (N.D. Ill. 2011) .................................................................... 22

Diedrich v. Ocwen Loan Servicing, LLC,
    839 F.3d 583 (7th Cir. 2016) ............................................................................. 3

Dillon v. Nathan,
    135 N.E.2d 136 (Ill. App. Ct. 1956) .................................................................... 15

E & J Gallo Winery v. Morand Bros. Beverage Co.,
    247 F. Supp. 2d 979 (N.D. Ill. 2003) .................................................................. 37

Elder v. Coronet,
    558 N.E.2d 1312 (Ill. App. Ct. 1990) .................................................................. 31

Foster McGraw Hosp. of Loyola Univ. of Chi. v. Bldg. Material Chauffers, Teamsters & Helpers
    Welfare Fund of Chi., Local
    786 F.2d 1023 (7th Cir. 1991) ........................................................................... 13

Frazier v. U.S. Bank Nat. Ass'n, No. 11 C 8775;
    2013 WL 1385612 (N.D. Ill. April 4, 2013)........................................................... 22

Gadson v. Newman,
    807 F. Supp. 1412 (C.D. Ill. 1992) ........................................................ 1, 2, 23, 25

Gainer Bank, N.A. v. Jenkins,
    672 N.E.2d 317 (Ill. App. Ct. 1996) .......................................................... 16, 17, 18

Greenpoint Mortg. Funding v. Family First Mortg.,
    2007 WL 2608554 .................................................................................... 25, 26

Illinois Bell. Tele. Co. v. Lake Cty. Grading Co.,
    728 N.E.2d 1178 (Ill. App. Ct. 2000) .............................................................. 38

Kartman v. State Farm Mut. Auto. Ins. Co.,
    634 F.3d 883 (7th Cir. 2011) ........................................................................... 37

Kelsay v. Motorola, Inc.,
    384 N.E.2d 353 (1978)...................................................................................... 26

Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.,
    83 N.E.3d 1027 (Ill. App. 2017) ........................... 7, 8, 9, 10, 11, 12, 15, 19

Martis v. Pekin Mem'l Hosp. Inc.,
    917 N.E.2d 598 (Ill. App. Ct. 2009) ................................................................ 33

Mehra v. Law Offices of Keith S. Shindler Ltd.,
    2015 WL 1996793 ............................................................................................ 32

Miller v. William Chevrolet/Geo, Inc.,
    762 N.E.2d 1 (Ill. App. Ct. 2001) ...................................................................... 3

Mosiman v. BMW Fin. Servs. NA, Inc.,
    748 N.E.2d 313 (Ill. App. Ct. 2001) ................................................................ 28

Mullins v. Direct Digital, LLC,
    2014 WL 5461903 (N.D. Ill. Sept. 30, 2014) .................................................. 37

N. Illinois Ins. Agency, Inc. v. Leading Ins. Grp. Ins. Co. (US),
    2014 WL 2860703 (N.D. Ill. June 23, 2014) ................................................ 21, 22

Ornelas v. Safeway Ins. Co.,
    1988 WL 102232 (N.D. Ill. 1988) ................................................................ 16, 17

Ortiz v. Werner Enterprises, Inc.,
    834 F.3d 760 (7th Cir. 2016) ........................................................................... 37

Overstreet v. CIT Mortg. Home Loan Tr. 2007-1,
    2017 WL 1022079 (N.D. Ill. Mar. 16, 2017)................................................... 17

People ex rel. Daley v. Grady,
    548 N.E.2d 764 (Ill. App. Ct. 1989) ....................................................... 32

Prescott v. Argen Corp., No. 13 CV 6147,
    2014 WL 4638607 (N.D. Ill. Sept. 17, 2014) ........................................ 27

Roche v. Zenith Ins. Co.,
    2009 WL 635503 ...................................................... 5, 12, 13, 14, 19, 31

Roselle Chiropractic, P.C. v. Hartford Fire Ins. Co.,
    No. 07-CV-3479 (N.D. Ill. Jan. 31, 2008) .............................................. 14

Ry. Devices Corp. v. Lusida Rubber Prod., Inc.,
    2006 WL 1697119 (N.D. Ill. June 13, 2006) .......................................... 32

Scherr v. Marriott Intern., Inc.,
    703 F.3d 1069 (7th Cir. 2013) ................................................................ 37

Siegel v. Shell Oil Co.,
    612 F.3d 932 (7th Cir. 2010) ............................................................ 28, 35

Smith v. Bray,
    681 F.3d 888 (7th Cir. 2012) .................................................................. 37

St. John v. Cach, LLC,
    822 F.3d 388 (7th Cir. 2016) .................................................................... 3

Tamayo v. Blagojevich,
    526 F.3d 1074 (7th Cir. 2008) .................................................................. 3

Villate v. Southport Bank,
    No. 1-13-1528, 2014 WL 3802579 (Ill. App. Ct. July 31, 2014) ............. 17

Walsh Chiropractic, Ltd. v. StrataCare, Inc.,
    752 F.Supp. 2d 896 (S.D. Ill. 2010)............................. 1, 2, 4, 10, 20, 22, 23, 24, 25

Whittler v. Midland Funding, LLC,
    2015 WL 3407324 (N.D. Ill. May 27, 2015) ......................................... 32

Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,
    536 F.3d 663 (7th Cir. 2008) .................................................................. 28

Zimmerman v. Buchheit of Sparta, Inc.,
    645 N.E.2d 877 (Ill. App. Ct. 1994) ........................................... 11, 12, 15

**Statutes**

215 ILCS 5/155 ................................................................................................................... 9

815 ILCS 505/2 ......................................................................................................... 12, 32

820 ILCS 305/4 ................................................................................................. 1, 5, 30, 33

820 ILCS 305/8.2 ............................................................................ 1, 3, 7, 25, 27, 31, 33

**Rules**

Rule 12 ............................................................................................................................ 3

Defendants begin boldly, lodging the pretense that they are not obligated to pay interest under the Illinois Workers' Compensation Act ("IWCA"). Yet they are. And they know it. The statute says they must pay. ("Every policy . . . shall cover . . . the entire compensation liability of the insured . . . [and] [i]n the event the employer does not pay . . . then an insurance company . . . shall become primarily liable."). 820 ILCS 305/4. So do the insurance policies they issue, as required by the IWCA. ("We will pay promptly when due the benefits required of you by the workers compensation law . . . [and] are directly and primarily liable to any person entitled to benefits payable by this insurance."). ECF 244-1 at 1, 2. And the Director of the Illinois Department of Insurance ("DOI") ordered them to do so:

> **NOTIFICATION TO MAINTAIN COMPLIANCE WITH THE INTEREST PROVISIONS CONTAINED IN 820 ILCS 305/8.2(d)(3).**
> **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
> **The purpose of this bulletin is to advise all insurance companies and claims administrators who adjust workers' compensation claims in Illinois of their duty to comply with the aforementioned statutory requirements.**

ECF 244-2, https://insurance.illinois.gov/cb/cb2012.html. Yet Defendants find the courage to direct the Court elsewhere.

The middle of the Motion continues the ruse. Defendants do everything they can to keep the Court from reaching the only issue it must: whether Dr. Beatty sufficiently pled an unfair practice claim under the Illinois Consumer Fraud Act ("ICFA"). This issue was already decided in cases like *Gadson* (harm to doctor's practice that causes harm to consumers by "increas[ing] the cost of health care to consumers" sufficiently states an ICFA claim) and *Walsh* (insurer's failure to pay doctor may cause "fee increases needed to cover . . . providers decreased income" and thus sufficiently states an ICFA claim). *Gadson v. Newman*, 807 F. Supp. 1412, 1416 (C.D. Ill. 1992); *Walsh Chiropractic, Ltd. v. StrataCare, Inc.*, 752 F.Supp. 2d 896, 913 (S.D. Ill. 2010). So Defendants treat this Court to a survey of claims Dr. Beatty *cannot* and *is not* bringing, all the

1

while misstating holdings and taking liberties with parentheticals to try to make it seem like the futility of claims not pled has some bearing on the single claim Dr. Beatty does press.

The Motion ends as it begins—in the realm of fantasy. Defendants craft a world where *might makes right*: it's fair, they say, for insurance companies to withhold undisputed, overdue payments from doctors, simply because they can and, until now, no one has found a way to make them pay what they owe. Conveniently, in this insurer's paradise, the IWCA—a statute built to address public health and safety—has no impact on consumers and the ICFA can be used only when a party has some other legal remedy. To reach this level of delusion, Defendants not only set aside logic, but wholly ignore a holding they strenuously and successfully argued for in *Medicos*: the interest provision is for the benefit of the employees, i.e. consumers. Put another way, an insurer's failure to pay interest "implicates consumer protection concerns."

As *Medicos* explains, the interest mandate ensures three public policy goals (1) lower prices, (2) access to quality healthcare, and (3) prompt, certain payment of benefits. Forcing doctors to finance an employee's treatment—sometimes for years—threatens these aims. Absent full and timely payments, prices to the general public must go up. Or doctors must go out of business. As pled by Dr. Beatty, "it deprive[s] him of the adequate and timely payments he needs to maintain his practice" in "detriment[] to the health of his patients and to the welfare of the general public." ECF 1, ¶ 2. This is more than enough to meet the consumer nexus test. *See Gadson* and *Walsh*.

What's more, this scheme exposes employees to liability for unpaid interest. ("Upon a final award or judgment . . . or a settlement . . . a provider may resume any and all efforts to collect payment from the employee . . . and the employee shall be responsible for payment of any outstanding bills for a procedure, treatment, or service rendered by a provider **as well as the**

*interest awarded under subsection (d) of this Section.*") 820 ILCS 305/8.2(e-20) (emphasis added). Exposing consumers to personal liability for bills an insurer was supposed to pay undeniably implicates consumer protection concerns. It defeats the IWCA's very purpose.

Defendants' refusal to pay their bills in full and on time is an unfair practice that deprives consumers of affordable, quality healthcare by driving prices up and doctors out of the market. Defendants refuse to pay because they don't believe they can be held accountable. That's the hallmark of unfairness: an imbalance of power that renders one side powerless. The ICFA was enacted to remedy imbalances of power, like this one. It "offers 'a clear mandate to the Illinois courts to utilize the Act to the greatest extent possible to eliminate all forms of deceptive or unfair business practices and provide appropriate relief to consumers.'" *Miller v. William Chevrolet/Geo, Inc.,* 762 N.E.2d 1, 11 (Ill. App. Ct. 2001). Beatty sufficiently states an unfair practice claim. Defendants' misdirection should be ignored and their Motion denied.

## STANDARD OF REVIEW

Rule 12(b)(6) establishes "two easy-to-clear hurdles for a complaint in federal court." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). A plaintiff need only "provide enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible**,** rather than merely speculative." *Id.* at 1083. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). The ICFA must be liberally construed. *Miller*, 762 N.E.2d at 11.

## ARGUMENT

The sole issue before the Court is whether Dr. Beatty has sufficiently alleged an unfair practice claim under the ICFA. To do so, he simply needs to allege facts from which a reasonable inference can be drawn that 1) he has standing under the consumer nexus test, and 2) he can plausibly recover under an unfair practices theory.

Dr. Beatty satisfies the consumer nexus test because he alleged facts showing Defendants' conduct 1) is addressed to the market generally and 2) otherwise implicates consumer protection concerns, either of which is sufficient. This Court has held that similar allegations establish standing. *See Walsh Chiropractic*, 752 F. Supp. 2d at 913.

For his prima facie case, Dr. Beatty simply needs to plead enough factual matter that an inference arises he may plausibly prove: (1) the practice offends public policy; (2) it is immoral, unethical, oppressive, or unscrupulous; (3) it causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). Only one *Robinson* factor needs to be plausible. The Complaint sufficiently alleges all three. *See id.*

First, Defendants conduct offends public policy as expressed by the legislature in the IWCA and, separately, by the Department of Insurance directive and Defendants' own policies. Defendants' public policy offenses meet the first factor and, thus, establish a prima facie case. Second, Defendants' conduct is immoral, unethical, oppressive, and unscrupulous because it gives injured employees (consumers) no choice but to incur further injuries inflicted by Defendants' scheme: increased prices, reduced availability of providers, and liability for Defendants' unpaid bills. Third, injured employees (consumers) are substantially injured by being exposed to untold millions of dollars in liability and suffering the consequences of increased prices and reduced access to care. Any of these three factors, standing alone, is enough to state an unfairness claim.

The vast majority of Defendants' arguments are irrelevant to this sole issue of whether the Complaint states an ICFA unfair practices claim. Part I of the Motion relies on a fundamental misunderstanding and mischaracterization of *Medicos*. Parts II and III rely on the false premise that healthcare providers cannot bring an ICFA unfair practices claim because the IWCA does not allow providers to bring an IWCA claim. The *Zenith* case directly refutes this argument. *Roche v. Zenith Ins. Co.*, 2009 WL 635503, at *7 (S.D. Ill. March 12, 2009) (finding that Roche could and did state an ICFA claim against a workers' compensation carrier relative to Roche's treatment of his patient under the IWCA). Nevertheless, for the benefit of the Court, this opposition follows the order of the Defendants' Motion, which does not address the ICFA until Part IV.

## I. DEFENDANTS HAVE A STATUTORY AND CONTRACTUAL DUTY TO PAY INTEREST ON LATE PAYMENTS—A DUTY REITERATED BY THE ILLINOIS DEPARTMENT OF INSURANCE

Defendants' primary argument is that they have no duty to pay interest "under IWCA Section 8.2(d)." ECF 224 at 5-10. In making this carefully-worded argument, Defendants do not argue that they have no duty to pay interest. Rather, Defendants merely argue that Section 8.2(d) does not place that duty on them. This very limited argument improperly isolates Section 8.2(d) and intentionally ignores the remainder of the IWCA. Defendants do not inform the Court that the IWCA, when read in its entirety, requires Defendants to pay their insured's entire liability and requires Defendants' policies to cover the entire liability. These statutory and contractual requirements are why the Illinois Department of Insurance ("DOI") notified Defendants of their duty to comply with the interest provisions of IWCA, specifically Section 8.2(d)(3). ECF 244-2.

The IWCA requires Defendants to pay interest, Defendants' own policies require them to pay interest, and the DOI instructed them to pay interest. Yet, Defendants neglected to inform the Court of any of these requirements in an attempt to dismiss this case and continue their illegal

scheme, because—if Section 8.2(d) is improperly isolated and the rest of the IWCA is ignored—it is not clear that Defendants are required to pay. This deceptive argument should be rejected.

### A. The Plain Language of the IWCA Unequivocally Places the Obligation to Pay Interest on Defendants

Defendants' Motion makes no mention of IWCA § 4(a)(3). This glaring omission speaks volumes about the lengths Defendants will go to continue their very profitable, yet illegal, scheme. Section 4(a)(3) requires employers who are not self-insured to "[i]nsure his entire liability to pay such compensation in some insurance carrier…." 820 ILCS 305/4(a)(3). Section 4(a)(3) goes on to require Defendants to cover the entire liability of the employer. "Every policy of an insurance carrier, insuring the payment of compensation under this Act shall cover all the employees and **the entire compensation liability of the insured**…." *Id*. (emphasis added). "'Entire' plainly means whole, complete and total." *Cont'l W. Ins. Co., Inc. v. Knox Cty. EMS, Inc.*, 52 N.E.3d 558, 566 (Ill. App. Ct. 2016) (interpreting Section 4(a)(3)).

Defendants' omission of Section 4(a)(3) decimates their statutory construction argument. "The primary rule of statutory interpretation, to which all other rules are subordinate, is that a court should ascertain and give effect to the intent of the legislature. The legislative intent should be sought primarily from the language used in the statute. Also, the statute should be evaluated as a whole, each provision should be construed in connection with every other provision." *Bonaguro v. Cty. Officers Electoral Bd., et al.*, 634 N.E.2d 712, 714 (Ill. 1994). When read as a whole, as it must be, the IWCA's legislative intent is revealed. Defendants are required to pay the entire compensation liability of the insured. The Court should reject Defendants' invitation to read Section 8.2(d) in isolation and to ignore the "who pays" provision of 4(a)(3).

Similarly, Defendants fail to mention their contractual obligation to pay interest. Illinois law requires Defendants' workers' compensation insurance policies to cover the "whole, complete

and total" liability of the insured employer, which necessarily includes the interest liability of Section 8.2(d). As in *Medicos*, it is undisputed that the insurance policies relevant to this case cover "the entire compensation liability of the insured" as required by IWCA Section 4(a)(3). *Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 83 N.E.3d 1027, 1033 (Ill. App. 2017) (noting that "[p]ursuant to the Act [IWCA]," the employers are insured by "identical workers' compensation insurance policies issued by defendants"); *see also* Doc 244-1. As part of Defendants' scheme, they intentionally do not abide by their policies with respect to paying interest, because the interest is owed to the providers and the providers are not parties to the policies.

Based on Defendants' statutory and contractual duties to pay interest, the Director of the Illinois DOI directed Defendants to pay the statutory interest. ECF 244-2. This DOI bulletin completely undermines Defendants' primary argument that they have no duty to pay interest. The one-page directive is clear and concise. After citing and quoting the IWCA's interest provisions, the Director of Insurance stated. "The purpose of this bulletin is advise **all insurance companies and claims administrators** who adjust workers' compensation claims in Illinois of **their duty to comply** with the aforementioned statutory requirements." *Id.* (emphasis added).

> **NOTIFICATION TO MAINTAIN COMPLIANCE WITH THE INTEREST PROVISIONS CONTAINED IN 820 ILCS 305/8.2(d)(3).**
> **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
> **The purpose of this bulletin is to advise all insurance companies and claims administrators who adjust workers' compensation claims in Illinois of their duty to comply with the aforementioned statutory requirements.**

*Id.* Erasing any arguable doubt about the IWCA's plain language, the legislative intent, and Defendants' contractual and statutory obligation to pay the interest, the DOI explicitly instructed Defendants to pay. *Id*. This agency directive is to be given special weight by the Court:

> [A] court will give substantial weight and deference to an interpretation of … a statute by the agency charged with the administration and enforcement of the statute. Such an interpretation expresses an informed source for the ascertaining of

legislative intent. A significant reason for this deference is than an agency can make informed judgments upon the issues, based on its experience and expertise.

*Bonaguro*, 634 N.E.2d at 715.

Defendants' argument that they have no obligation to pay interest is contradicted by the IWCA, the DOI, and Defendants' insurance policies. It should be rejected.

> **B. *Medicos* Does Not Involve an ICFA Claim; However, *Medicos* Does Explain Why an ICFA Claim is Appropriate Given the Consequences of Defendants' Illegal Scheme**

Defendants' irrelevant argument that healthcare providers do not have the right to bring an IWCA claim focuses on the *Medicos* case.[1] *Medicos* is the key case underlying Defendants' Motion, yet *Medicos* did not involve an ICFA claim. Defendants mischaracterize *Medicos* as holding that insurers are not required to pay interest under Section 8.2(d). ECF 224 at 17. That holding is nowhere to be found in *Medicos*. *Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 83 N.E.3d 1027 (Ill. Ct. App. 2017). However, *Medicos* is quite relevant to the sole issue before this Court (i.e., whether the Complaint sufficiently pleads an ICFA claim). As explained below in Section IV, *Medicos* describes the history, purposes, and goals of the IWCA, which support the ICFA claim at issue and explain why Defendants' unfair practices violate public policy, impact the entire State of Illinois, and implicate consumer protection concerns.

Plaintiffs in *Medicos* brought three claims: one as third-party beneficiaries of the insurance contracts, one arguing for an implied right of action to bring an IWCA claim, and a final claim for implied-in-fact contract. *Marque Medicos*, 83 N.E.3d 1027. Plaintiffs did not bring an ICFA claim. *Id.* Although the court held that no private right of action exists for plaintiffs to bring an IWCA

---

[1] *Medicos* is a single case that was dismissed in the circuit court, and that dismissal was affirmed. Defendants refer to the trial court order as "*Medicos I*" and the appellate court order as "*Medicos II*." But there are not two *Medicos* cases.

claim, the court did not hold—as Defendants' incorrectly claim—"that insurers have no duty to pay interest under section 8.2(d)." ECF 224 at 17. Nor did the court hold that healthcare providers can never bring any action directly against insurers to recover statutory interest. Those issues were not before the court. Appellate courts do not make "holdings" on issues not before them. Not only did the *Medicos* court not hold what Defendants claim, the court does not even state in dicta what Defendants claim. In fact, *Medicos* states the opposite.

Far from holding that Defendants have no duty, *Medicos* explains three times that Section 8.2(d) interest is to be paid by "an employer or insurer" and was designed to penalize any failure to make prompt payment of compensation. *Medicos*, 83 N.E.3d at 1035, 1041, 1043. "An employer or insurer" is responsible for paying interest depending on whether the employer is self-insured or has an insurance carrier. *Id.* at 1035. In this class action, the insurance carriers are Defendants, not self-insured employers. Defendants are responsible for paying interest. *Id.*

Likewise, far from holding that healthcare providers cannot bring any action against insurers to recover interest, the court held that providers can bring claims in circuit court related to Section 8.2(d) of the IWCA. *Id.* at 1039. Such claims are not vested with the Illinois Workers' Compensation Commission; they are within the subject-matter jurisdiction of the courts. *Id.* Therefore, the court proceeded to address the substantive viability of the claims, none of which were ICFA claims. *Id.* If providers could not bring any claim against insurers related to Section 8.2(d), the court would have said so and would not have analyzed the claims' merits.

Defendants are simply wrong about the "holdings" in *Medicos*. Defendants' summary of the case on pages 8-9 is a gross mischaracterization. ECF 224 at 19-20. The actual holdings are: 1) the courts have subject-matter jurisdiction to hear claims by providers against insurers related to the IWCA; 2) providers are not third-party beneficiaries to workers' compensation insurance

contracts, 3) providers have no implied right of action to bring an IWCA claim, 4) providers do not have an implied-in-fact contract with workers' compensation carriers, and 5) providers are not entitled to recover attorney fees and statutory damages against carriers under 215 ILCS 5/155. *Medicos*, 83 N.E.3d at 1042-45. For Defendants to argue that *Medicos* made a "holding" about whether Plaintiffs can bring an ICFA claim is, at best, a fundamental misunderstanding of the case.

The court held that providers do not have a private right of action to bring an IWCA claim. Defendants understand this to mean that the court held "providers cannot sue insurers to collect [] interest" under the ICFA or any other claim. ECF 224 at 19. Taking the mischaracterization a step further, Defendants state that providers cannot assert any plausible claim under any theory and "providers may not pursue direct claims against insurers." ECF 224 at 19-20. Providers can sue insurers. Courts, including *Medicos*, have made this clear. *E.g., Medicos*, 83 N.E.3d at 1039; *Walsh*, 752 F.Supp. 2d at 913. Many Defendants in the present case were defendants in *Medicos*, and many of the defense lawyers in this case were counsel of record in *Medicos*. To have such a fundamental misunderstanding of the case is hard to believe. Instead, it seems the unfortunate reality is that Defendants' mischaracterization of *Medicos* is an attempt to mislead the Court.

## C. Defendants' Unanimous Decisions to Not Pay Interest, Violate the IWCA, Not Abide by Their Policies, and Ignore the DOI Undermine Public Policy

Defendants' false premise—that they have no duty to pay interest—haunts their next argument as well. This ICFA case is about Defendants' unfair practices that undermine public policy, the IWCA, their own policies, and the DOI, thereby frustrating the goals of the IWCA, including Section 8.2(d). Defendants' illegal scheme proximately caused and continues to cause

injury to consumers (i.e. Illinois employees) as well as to Illinois healthcare providers.[2] Ironically, Defendants' next argument is that this lawsuit is what will undermine the IWCA.

Again, this argument is directly refuted by the IWCA's legislative purpose and goals. *Medicos*, 83 N.E.3d at 1036-67, 1043. Healthcare providers can bring claims in circuit court against insurers, including claims related to insurers' refusal to pay statutory interest. Defendants argue otherwise because 8.2(d) "is the sole basis for Beatty's ICFA claim" and 8.2(d) says employers, not insurers, pay the interest. ECF 224 at 20-21. And, once again, this argument ignores Section 4(a)(3), which requires Defendants to pay the entire liability of the employers, ignores Defendants' own contracts, and ignores the DOI bulletin. Further, this is a misunderstanding of the Complaint. Section 8.2(d) is not the sole basis for the ICFA claim at issue. The IWCA as a whole, including but not limited to Section 8.2(d), is one basis for Defendants' duty to pay interest. ECF 1 at ¶¶ 3-5. The insurance contracts required by the IWCA are another basis. And the DOI bulletin, further explaining the legislative intent and public policy of the IWCA, is another basis. Should the Court find that Plaintiff did not sufficiently state that Section 8.2(d) was one part of the IWCA statute at issue or that the IWCA as a whole is the basis for Defendants' duty to pay, Dr. Beatty respectfully requests leave to amend the Complaint accordingly.

Defendants rely on *Zimmerman* to argue that this ICFA claim cannot proceed, because the IWCA does not expressly state that an unfair practices claim may be brought for conduct related to the IWCA. This argument has no merit. Statutes do not have to explicitly allow for an ICFA claim in order for an ICFA claim related to that underlying statute to be appropriate. Further, that

---

[2] Tens or possibly hundreds of millions of dollars in unpaid interest existed in Illinois as of June 2014. *See* Exhibit 1 (Minutes of the Ill. Workers' Comp. Comm'n Medical Fee Advisory Bd. Meeting (June 6, 2014), https://www2.illinois.gov/sites/iwcc/about/Pages/boards.aspx#WCMFAB.

is not what *Zimmerman* held. The court in *Zimmerman*: 1) refused to expand the doctrine of retaliatory discharge to allow for a claim of retaliatory demotion, and 2) held that Section 4(h) of the IWCA does not support judicially creating a new cause of action based solely on a demotion. *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 882 (Ill. App. Ct. 1994). There is no comparison between Dr. Beatty's claim under the ICFA, an existing statute, to the *Zimmerman* plaintiff's argument that a completely new cause of action should be recognized.

To the extent *Zimmerman* is apposite at all, it supports Plaintiff. Illinois courts should not create "**new** causes of action, ***implied from the terms of particular provisions of the Act***, unless a compelling case can be made for their necessity." *Id.* at 884 (emphasis added). There is nothing new or implied about an ICFA claim. If Defendants' conduct is an unfair practice in the conduct of trade or commerce that affects the people of Illinois, then that conduct is actionable. 815 ILCS 505/2. This Court is not being asked to create or imply a new cause of action. The sole issue before the Court is whether the Complaint sufficiently pleads an ICFA claim.

Finally, Defendants' suggestion that the IWCA provides for an administrative procedure to collect interest is misplaced. As *Medicos* made clear, the IWCA did not divest the circuit court of its original jurisdiction over claims such as this under the ICFA or over class actions. *Medicos*, 83 N.E.3d at 1039; *Roche v. Zenith Ins. Co.*, 2009 WL 635503, at *7 (S.D. Ill. March 12, 2009) ("*Zenith*") (class action is impossible to bring before the Workers' Compensation Commission).

## II. DR. BEATTY DOES NOT BRING A CLAIM UNDER THE IWCA

Defendants' second argument is that healthcare providers lack standing to bring an IWCA claim. ECF 224 at 22. This argument is irrelevant. Dr. Beatty's claim is an ICFA claim, not an IWCA claim. ECF 1. Dr. Beatty has standing to bring an ICFA claim, as explained below in Section IV. The question before the Court is whether the Complaint sufficiently pleads an ICFA

claim. Defendants' Motion attempts to sidestep that question in its first 18 pages by focusing on the irrelevant issue of whether Dr. Beatty could have brought an IWCA claim.

Desperate to dress up Dr. Beatty's ICFA claim as an IWCA claim, Defendants continue to isolate statements from Illinois case law, misinterpret or mischaracterize those isolated statements, and ignore other case law that directly refutes their argument. Representative is Defendants' assertion that Dr. Beatty lacks standing based on a 2001 opinion by Judge Easterbrook, stating: "Illinois law does not allow a provider of medical care to sue a workers' compensation carrier." *Foster McGraw Hosp. of Loyola Univ. of Chi. v. Bldg. Material Chauffers, Teamsters & Helpers Welfare Fund of Chi., Local 786*, 925 F.2d 1023, 1024 (7th Cir. 1991). When read in context, this dicta simply notes why plaintiffs did not include the employer's insurance carrier as a defendant in that particular suit, namely ¶ 138.21 of the Workers Compensation Act, Ill. Rev. Stat. ch. 48. "Unable to see an attractive way to bring the workers' compensation carrier into the litigation, the Hospital sued only the welfare plan…". *Foster McGraw*, 925 F.2d at 1024.  Judge Easterbrook merely observed that a provider cannot bring an IWCA claim against the carrier, which has no bearing on the ICFA claim at issue here.

This Court already recognized that Defendants' interpretation of *Foster* is "[o]bviously" wrong. Regarding Judge Easterbrook's statement, Judge Reagan noted: "Obviously, this statement was not part of the court's holding, but rather dicta explaining why the hospital chose not to join both insurers as interpleader defendants." *Zenith*, 2009 WL 635503, at *7. Defendants' representation that this dicta was a holding and binding on this Court is incorrect.  Regardless, the Court should reject the argument because Defendants misinterpret the quote. *Id.*

Not only does *Zenith* explain why Defendants' second argument is wrong, it undermines the entire motion to dismiss. In *Zenith*, this Court found that Roche could and did state an ICFA

claim against a workers' compensation carrier relative to Roche's treatment of his patient under the IWCA. *Zenith,* 2009 WL 635503, at *7-8. Yet, Defendants somehow find it appropriate to tell this Court that "providers may not pursue direct claims against insurers" and cannot sue insurers directly "for claims under **or relating to** the IWCA." ECF 224 at 20, 24 (emphasis added).

The defendant in *Zenith* argued exactly what Defendants argue here—"a medical provider cannot sue a workers' compensation carrier under any circumstances." *Zenith,* 2009 WL 635503, at *7. This Court flatly rejected the argument. *Id.* at *8 (denying motion to dismiss ICFA and unjust enrichment claims, because "the Workers' Compensation Act does not prohibit Roche's claims"). In so doing, this Court cited *Roselle*, which involved "nearly identical" claims. *Id.* In *Roselle*, the court noted that Roche was "seeking to represent a class of medical providers, which would be procedurally impossible to do before the Commission." *Id.* (quoting *Roselle Chiropractic, P.C. v. Hartford Fire Ins. Co.*, No. 07-CV-3479 (N.D. Ill. Jan. 31, 2008) (ECF 42)). Likewise, the Plaintiff class of providers here could not bring a claim before the Commission as Defendants suggest. ECF 224 at 21.

Again, the IWCA's lack of an implied private right of action is not relevant. There is no case rejecting an ICFA claim against Defendants or indicating that an ICFA claim based on conduct related to the IWCA cannot be pursued. To the contrary, this Court held that a healthcare provider can assert an ICFA claim against Defendants for conduct related to the IWCA. *Zenith,* 2009 WL 635503, at *7-8.

Defendants argue that if providers cannot bring a claim directly under the IWCA, then they cannot bring any other claim against Defendants under any other statute. ECF 224 at 24-25. This is logically flawed. If the legislature intended the ICFA to apply only when another statutory cause of action already existed, then the ICFA would be superfluous. Moreover, once again, Defendants'

cited cases do not support their contention. Defendants cite *Zimmerman*, but that case (like *Medicos*) rejected an implied cause of action under the IWCA. *Zimmerman*, 645 N.E.2d at 882-83. *Zimmerman* was an employee-employer dispute that implicated the IWCA's exclusivity provisions. *See id.* at 879. Exclusivity does not apply here, as that provision was designed to "limit recovery **by employees** to the extent provided by the Act in regard to work-related injuries." *Id.* (emphasis added). There is no basis for excluding a ***provider's*** claim brought under a different statute. In fact, *Zimmerman* supports Dr. Beatty, not Defendants. *Zimmerman* recognized that common law retaliatory discharge is actionable despite the fact "that nothing in section 4(h) expressly provides a remedy for an employee or imposes a sanction upon an employer in the event that the terms of section 4(h) are violated." *Id.* at 880. Therefore, separate causes of action—such as one under the ICFA—are not barred by a lack of express remedy in the IWCA. *Zimmerman* is further support for this Court's holding in *Zenith* that ICFA claims may be brought against insurers for conduct related to the IWCA. *Zenith,* 2009 WL 635503, at *7-8.

Defendants' inapposite citations continue with *Dillon v. Nathan*. Defendants state, "The insurer argued that it could assert a subrogation interest, despite the absence of any mention of beneficiaries in this section of the IWCA, because it could do so at common law." ECF 224 at 54. In fact, the employer and insurer in that case did not, and could not, so argue:

> If the appellants here are relying upon some claimed common law right of subrogation, of lien, and of intervention, separate from and independent of their claims under the statute, Ch. 48, Ill.Rev.Stats.1953, par. 138.5, which matter is not made clear in their briefs, such is a claim or theory evidently not presented to and urged in the trial court, and they may not try their case on one theory in that court and, to that extent, upon a distinct and wholly different theory in the Appellate Court.

*Dillon v. Nathan*, 135 N.E.2d 136, 145 (Ill. App. Ct. 1956). *Dillon* and *Zimmerman* involve claims under the IWCA made by employers or employees. Neither case provides any authority to dismiss a claim under the ICFA made by a provider.

Defendants' argument in part II, which continues in part III, can be summed up exactly as the argument in part I:  Dr. Beatty cannot bring a claim under the IWCA. The argument is irrelevant, because Dr. Beatty's claim is an ICFA claim.

### III. THE ICFA PROVIDES AN INDEPENDENT CAUSE OF ACTION

Defendants' third section repeats and recasts its prior sections, and the Court should reject these arguments for the above reasons. ECF 224 at 25. The basis for the arguments in part III is that "[p]roviders simply are not permitted to sue insurers directly"; thus, if there is no private right of action under the IWCA, then there can be no ICFA claim. *Id*. Again, this is wrong. *Zenith,* 2009 WL 635503, at *7-8 (denying motion to dismiss an ICFA claim brought by a provider against an insurer for conduct related to the IWCA). Further, it is illogical for Defendants to argue that the ICFA cannot provide relief if the underlying statute does not provide for a private cause of action. The ICFA would be superfluous if it only provided relief already available through another statute.

#### A.  The ICFA Does Not Require an Underlying Statutory Right of Action

Directly contrary to Defendants' argument, "a plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations . . . that themselves do not allow for private enforcement." *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Tr., Series 2003-1*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011) (*citing Gainer Bank, N.A. v. Jenkins*, 672 N.E.2d 317, 318–19 (Ill. App. Ct. 1996) (plaintiff may predicate an ICFA claim on a violation of the Illinois Motor Vehicle Retail Installment Sales Act, which does not allow for a private right of action)); (*Ornelas v. Safeway Ins. Co.*, 1988 WL 102232, at *1 (N.D. Ill. 1988) (same for DOI regulation prohibiting insurance companies from subjecting insureds to polygraph examinations)).

Although they cite *Boyd*, Defendants assert the exact opposite. ECF 224 at 26-27 ("if there is no private right of action under a particular statute, there can be no ICFA claim based on a

purported violation of that statute."). Defendants' mischaracterization of *Overstreet* is incorrect because, as *Boyd*, *Gainer*, and *Ornelas* reveal, a "plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations … that themselves do not allow for private enforcement." *Boyd*, 787 F.Supp.2d at 752. The court in *Overstreet* rejected an ICFA claim based on an alleged violation of the RMLA, because the alleged conduct was explicitly allowed by the RMLA and plaintiff cited to "no other 'public policy' that BNC's conduct violates…." *Overstreet v. CIT Mortg. Home Loan Tr. 2007-1*, 2017 WL 1022079, at *6 (N.D. Ill. Mar. 16, 2017). Similarly, in *Villate*, plaintiff alleged that defendants violated the IHRHLA by charging more than 5% in points and fees, but the court held that the total points and fees did not add up to 5%. *Villate v. Southport Bank*, No. 1-13-1528, 2014 WL 3802579, at *11 (Ill. App. Ct. July 31, 2014). Here, Defendants admit that they do not pay the interest required by the IWCA. Defendants' citations continue to miss the mark, and Defendants' arguments mischaracterize the Complaint.

Defendants' real argument in employing *Overstreet*—like its citations to *Martis*, *Villate*, and *Boyd*—comes down to the same false narrative that Section 8.2 does not require Defendants to pay interest. As explained in part I.A., *supra*, the IWCA does require Defendants to pay the interest, and Defendants' illegal scheme violates public policy by undermining the purpose and goals of the IWCA, by ignoring the DOI directive to pay interest, and by not following their own insurance policies that the IWCA requires to cover the insured's "entire" liability.

In *Boyd*, the plaintiff predicated his "unfairness" claim on "alleged violations of HAMP or IHPA," neither of which "allows for a private right of action." *Boyd*, 787 F.Supp.2d at 752. However, the *Boyd* court found it permissible for plaintiff to base his ICFA unfairness claim on an underlying statute that does not permit a right of action. *Id.* "[A] plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations, like HAMP and IHPA, that

themselves do not allow for private enforcement." *Id. Boyd* directly contradicts Defendants' contention. *Boyd* also instructs that "[v]iolations of agency directives like these can be the hallmark of unfairness under the ICFA." *Boyd*, 787 F.Supp.2d at 753. Defendants' failure to follow the DOI directive alone is a sufficient basis on which to predicate this unfairness claim.

*Gainer Bank* is similarly instructive. At issue was whether an ICFA claim could be based on a violation of the Illinois Motor Vehicle Retail Sales Act, a statute that did not allow a private right of action. *Gainer Bank v. Jenkins*, 672 N.E.2d 317 (Ill. App. Ct. 1996). The court held the underlying statute need not provide for private enforcement in order to state an ICFA claim. *Id.* at 319. ICFA claims need not be based on a statute that permits private enforcement.

### B. Dr. Beatty Did Not Bring an IWCA Claim.

Defendants continue to repeat prior arguments. Part III, B. argues that providers cannot bring an IWCA claim; thus, providers cannot bring any claim based on conduct related to the IWCA. As explained above, this is false and this Court and others have held otherwise.

Defendants' repeated effort to mischaracterize Dr. Beatty's ICFA claim as an IWCA claim reveals the weakness of their arguments that are actually directed to the ICFA. The Complaint explains how Defendants' ongoing and systematic scheme violates the IWCA and undermines public policy. Defendants' illegal scheme violates the public policy of the IWCA and the DOI directive by not paying the interest mandated by the IWCA and their own contracts. The Court should ignore Defendants' attempt to twist the Complaint's IWCA references as asserting a direct claim under the IWCA. Defendants are intentionally and systematically engaging in unfair practices—practices that are actionable under the ICFA—by developing and participating in an ongoing scheme to undermine public policy and avoid the requirements of the IWCA, the requirements of their own contracts, and the directive of the DOI.

Judge Reagan's decision in *Zenith* is instructive. All that Dr. Beatty is required to do is "to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is ***plausible*** rather than merely speculative, that he is entitled to relief. *Roche* at *1 (emphasis added). Defendants' assertion that Dr. Beatty's claim is not plausible rests entirely on: 1) their mischaracterization of the claim as an IWCA claim; 2) their improper isolation of Section 8.2(d) and failure to mention Section 4(a)(3), and 3) their mistaken premise that the Complaint is based on Section 8.2(d) alone rather than the entire IWCA, and misleading arguments made based on their carefully worded mistaken premise. As explained repeatedly above, Defendants' assertions are incorrect.

### C. ICFA Claims are Not New or Novel

Defendants regurgitate the same misplaced citations to argue that claims under the ICFA are somehow "novel." ECF 224 at 29. Defendants argue that providers may not bring a claim due to IWCA Section 4(g) and that *Medicos* somehow prevents the recovery Dr. Beatty seeks. Both arguments are incorrect. To summarize, providers may bring an ICFA claim even if no private right of action exists to bring an IWCA claim. And, Defendants' misinterpretation of *Medicos* is obvious based on a cursory read of the case.

Defendants argue that allowing an ICFA claim to continue will somehow "expand state law." ECF 224 at 29. The ICFA was enacted over a half century ago. It has been applied countless times by federal courts. There is nothing novel about asserting an ICFA claim in this Court. The novelty in this case comes from Defendants' illegal scheme that harms Illinois patients and doctors and undermines the public policy pronounced by the legislature, the Department of Insurance, and Illinois case law. Dr. Beatty simply asks this Court to apply longstanding ICFA law to the facts of Defendants' illegal scheme.

## IV.    DR. BEATTY STATES AN ICFA CLAIM

The sole issue before the Court is whether Dr. Beatty sufficiently pleads an IFCA unfair practice claim. Finally, in part IV, Defendants address the ICFA. ECF 224 at 30. Defendants attack Dr. Beatty's standing to bring an ICFA claim and the elements of his prima facie case. Neither argument has merit.

Dr. Beatty has standing because he satisfies the consumer nexus test. Defendants' conduct: 1) is directed to the market generally, and 2) otherwise implicates consumer protection concerns, either of which is sufficient. This Court has held that similar factual allegations about consumer protection concerns are sufficient to establish standing. *See Walsh*, 752 F.Supp.2d at 913.

The standard for determining an unfair practice has three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). "All three criteria ***do not*** need to be satisfied to support a finding of unfairness." *Robinson*, 775 N.E.2d at 961 (emphasis added). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* Here, all three factors are met to a very high degree, although the Court need find only one factor met to deny Defendants' Motion.  Defendants' scheme is directly contrary to public policy; it is immoral, unethical, oppressive, and unscrupulous; and it causes substantial injury to consumers.

### A.  Dr. Beatty's Allegations Satisfy the Consumer Nexus Test.

An ICFA plaintiff has standing under the consumer nexus test if his claim "involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *See Walsh*, 752 F.Supp.2d at 913. Facts similar to those in Dr. Beatty's Complaint were

adequate to establish standing even though the allegations were explained in a response brief as inferences to be drawn from the complaint. *Id.*

Defendants fail to address the disjunctive nature of the consumer nexus test. Defendants' conduct is addressed to the market generally. ECF 1 at ¶¶ 3, 5, 113 ("the public health"), 138 ("the people of Illinois"), 140 ("substantial injury to consumers"). Defendants' scheme impacts every participant, including every patient and future patient, in the Illinois Workers' Compensation system. This fact alone is sufficient to meet the consumer nexus test. Although Defendants focus primarily on the second aspect of the test (i.e., consumer protection concerns), the Court need not reach that analysis given that Defendants' scheme is addressed to the market generally.

1. **Defendants' refusal to comply with the IWCA, the DOI directive, and their own policies are unfair practices directed to the market generally.**

"Defendants systematically and routinely fail and refuse to make these interest payments due doctors as required by the statute." ECF 1 at ¶ 5. Defendants' flat out refusal to comply with the IWCA and DOI Bulletin, therefore, is not a limited practice. Defendants refuse to pay interest on any late-paid or unpaid bill, thereby impacting every patient and provider in the entire Illinois healthcare market. ECF 1 at ¶¶ 2, 3, 5, 113, 121, 134, 140, 141. The practice is indiscriminate and total. One could hardly think of conduct directed at the market in a more general way.

Defendants cite *Northern Illinois Ins. Agency* for the proposition that "Practices relating to the administration of insurance policies do not have 'implications for the market generally.'" ECF 224 at 36. Despite Defendants' deceptive use of quotation marks, the case cannot honestly be interpreted to suggest that ***every*** practice relating to insurance policies does not affect the market generally. Indeed, if one merely reads the paragraph containing Defendants' quote, the misleading citation is obvious. The plaintiff alleged that false statements were made to its customers who were also defendants' customers. *N. Illinois Ins. Agency, Inc. v. Leading Ins. Grp. Ins. Co*. (US), 2014

WL 2860703, at *2 (N.D. Ill. June 23, 2014). The court concluded "**None of these has** implications for the market generally." *Id.* (emphasis added to portion omitted). Defendants then cite three other cases involving representations made to individuals rather than the public. ECF 224 at 36-37.

Of course, statements made to some of one company's customers are not directed to the market generally. The same cannot be said for Defendants' blanket refusal to pay interest to anyone—an unfair practice directed to the "welfare of the general public." ECF 1, ¶ 2. Defendants' scheme impacts every patient, every potential future patient (i.e., all Illinois employees), every doctor in the Workers' Compensation market, and every doctor who, in the future, decides whether to practice in Illinois. In other words, Defendants' scheme is directed to all of Illinois.

Dr. Beatty meets the consumer nexus test because Defendants' unfair practices are directed to the market generally. *See Frazier v. U.S. Bank Nat. Ass'n*, No. 11 C 8775; 2013 WL 1385612, at *4 (N.D. Ill. April 4, 2013) (finding allegations that defendants had an "established" practice to track "plaintiff and other borrowers' loans en masse" sufficient to meet consumer nexus test); *see also CustomGuide v. CareerBuilder, LLC*, 813 F.Supp.2d 990, 1001 (N.D. Ill. 2011) (allegation that defendant "intended that general consumers and the general public rely" on its practices sufficiently alleged a consumer nexus); *see also Walsh,* 752 F. Supp. 2d at 913.

Defendants' practices "are detrimental to the health of his patients and the welfare of the general public." ECF 1 at ¶¶ 2, 140. "Substantial injury is caused consumers because physicians are deprived of the funds they need (and have rightly earned) to properly maintain their practices and serve the public." ECF 1 at ¶ 140. The consumer nexus test is met.

## 2. Defendants' refusal to comply with the IWCA and DOI directive implicates consumer protection concerns.

Even if Defendants' unfair practices were not directed at the market generally, Dr. Beatty would still satisfy the consumer nexus test because their scheme implicates consumer protection

concerns. In determining whether an implication of consumer protection concerns is alleged, courts consider: (a) actions that establish a link between the plaintiff and consumers, (b) how defendant's unfair or deceptive practice concerned consumers other than the plaintiff, and (c) how the requested relief would serve the interest of consumers. *Walsh*, 752 F. Supp. 2d at 913.

### a. There is an undeniable link between doctors and patients

Dr. Beatty alleges the link between himself and consumers (i.e. patients). ECF 1 at ¶ 2 ("Defendants' practices as set forth below are detrimental to the health of his patients and to the welfare of the general public."). Thus, Dr. Beatty alleged a link to not only his own patients, but all patients in Illinois. This link, between doctors and patients, has been held to satisfy the consumer nexus test in ICFA cases. *See, e.g., Gadson*, 807 F. Supp. at 1416 (pleading harm to doctor's practice that also caused harm to health care consumers by "increase[ing] the cost of health care to consumers" sufficiently states an ICFA claim); *Walsh*, 752 F.Supp.2d at 913 (pleading harm to doctor's practice by insurer's failure to pay that may also cause "fee increases needed to cover ... providers decreased income" sufficiently states an ICFA claim).

Defendants' sole argument against finding a link between healthcare providers and patients is that the patients "are not consumers of the insurance policies and services provided by the defendants." ECF 224 at 35. Again, this Court already rejected a very similar argument. In *Walsh*, the patients were not "consumers of the insurance policies and services provided by the defendants," but were harmed "by [defendant's] alleged [ICFA violations], via fee increases needed to cover their providers decreased income." *Walsh*, 752 F. Supp. 2d at 913. Standing question does not turn on who consumes what. It turns on who is harmed by what unfair practices. If consumers are harmed, and there is a link between the plaintiff and consumers, that is enough to confer standing on the plaintiff under the consumer nexus test.

### b. Defendants' failure to pay interest concerns consumers generally and implicates consumer protection concerns.

Dr. Beatty alleges Defendants' practices are detrimental to the health of his patients and the general public's welfare. By keeping untold hundreds of millions that belong to healthcare providers and diverting the money to their own use, Defendants deprive providers of revenues to maintain their practices. ECF 1 at ¶¶ 2, 140. Diminished access to quality healthcare and higher prices are the obvious consequences placed on all Illinois employees by Defendants' scheme.

In *Walsh*, consumer protection concerns were implicated by a scheme likely causing higher chiropractor fees to the detriment of medical consumers. 752 F.Supp.2d at 913. The only factual allegation in *Walsh* was that the defendants' practices "reduc[ed] the reimbursement of medical services below their reasonable value." *Id.* However, the court—as it should when considering a 12(b)(6) motion—drew a reasonable inference: "namely, that patients of medical providers (i.e. actual consumers at large) may be affected by [defendant's] alleged fraudulent claims of PPO discounts, via fee increases needed to cover their providers decreased income." *Id.*

Dr. Beatty goes far beyond the plaintiff in *Walsh*. Defendants' practices "are detrimental to the health of his patients and the welfare of the general public" and "deprive him of the adequate and timely payments he needs to maintain his practice." ECF 1 at ¶¶ 2, 140. As explained below, the legislative purpose behind the interest provision was to hold down costs without decreasing access to quality healthcare. Dr. Beatty's allegations explain how Defendants' scheme undermines the exact public policies underlying the IWCA.

Doctors finance their own treatment while waiting for Defendants to pay. If Defendants finally pay, albeit late, the payment will not include interest. Obvious fallout includes fewer doctors providing care, or devoting time in their practice, to injured Illinois employees. Dr. Beatty alleges harm that the *Walsh* court had to infer: deprivation of funds needed to maintain his practice

in the public interest. "Substantial injury is caused consumers because physicians are deprived of the funds they need (and have rightly earned) to properly maintain their practices and serve the public." ECF 1 at ¶ 140. This is sufficient, as a matter of law, because consumer protection concerns are present when allegations implicate "public health, safety, or welfare issues." *Greenpoint Mortg. Funding v. Family First Mortg.*, 2007 WL 2608554, at *14.

Further, consumer implication concerns exist because Defendants' scheme exposes patients to liability as explained above. 820 ILCS 305/8.2(e-20). Defendants claim patients will not be exposed to unpaid interest liability. ECF 224 at 38. Yet, Defendants immediately contradict themselves, confirming that a provider may recover from the patient at times: namely, when the insurance company doesn't pay. *See* 820 ILCS 305/8.2(e-20).

The only distinction Defendants provide between this lawsuit and *Walsh* is that the unfair practice in *Walsh* was a silent PPO scheme and this is not. ECF 224 at 38. This argument misses the point. The schemes here and in *Walsh* result in increased costs to patients, which this Court found sufficient for ICFA standing pursuant to the consumer nexus test. The difference is that the scheme here has other consequences that further implicate consumer protection concerns.

Consumer protection concerns have been found in other similar circumstances. In *Gadson v. Newman*, the court found such concerns implicated by allegations that healthcare consumers could be harmed by a contract between another doctor and St. Mary's Hospital. 807 F. Supp. 1412, 1421 (N.D. Ill. 1992). The court noted the "public effect" caused by the scheme which "would increase the cost of health care to consumers in the Quincy, Illinois area." *Id.* at 1416. *Id.* Gadson, like Beatty, alleged "that his own business has been damaged as a result of these actions. These pleadings satisfy the 'liberal construction' of the pleading requirements as stated in *Wigglesworth*." *Id.* at 1421. Much more concerning here, Defendants' scheme impacts all of Illinois.

More generally, Defendants' practices raise serious "public health, safety and welfare" issues. Defendants' systemic refusal to pay statutorily and contractually mandated interest strikes at the very foundation of the IWCA's purpose: "to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 356 (1978). The interest provision in Section 8.2(d) was designed to "hold down . . . medical costs to injured workers" while doing so "in a way that does not harm the injured workers' ability to access quality health care." 94th Ill. Gen. Assem., Senate Proceedings, May 26, 2005, at 85 (Senator Cronin). Defendants' unfair practices undermine the public policy of the IWCA. Defendants' scheme imperils employees' ability to access quality health care. It is certainly a reasonable conclusion that fewer qualified physicians will offer their services t because they cannot afford to subsidize the treatment of patients covered by the IWCA. Defendants' scheme undeniably implicates "public health, safety, or welfare issues." *Greenpoint*, 2007 WL 2608554, at *14.

This District has found similar, but less substantive and consequential, allegations adequate to establish standing. Defendants' scheme concerns consumers generally and implicates consumer protection concerns. If the Court disagrees, reasonable inferences can be drawn from the allegations. For example, doctors will have to increase fees, reduce the Workers' Compensation services rendered, or stop rendering such services. Plaintiff seeks leave to amend if the Court deems necessary to further expound on the consequences of Defendants' scheme.

### c. Consumer interests will be served by making Defendants pay the interest mandated by law and by their own insurance policies, as recognized by the Department of Insurance

Plaintiff seeks monetary damages from Defendants in the amount of interest Defendants are obligated to pay. Consumers would benefit if Illinois physicians received the funds necessary to maintain their practices, did not need to increase costs due to the ongoing scheme, and continued

to offer Workers' Compensation services. Likewise, the injunction sought would bring certainty to the system, prevent increased costs, and ensure access to quality healthcare. Making Defendants comply with the IWCA, the DOI directive, and their own policies by paying interest on late bills also serves the interests of consumers by ensuring that employees (the consumers) are not saddled with liability due to Defendants' failure to pay. *See* 820 ILCS 305/8.2(e-20).

Defendants cite *Prescott* to argue that none of Dr. Beatty's requested relief "would benefit the damaged patients in the least." ECF 224 at 39. *Prescott* did not involve patients who were harmed by defendant's actions. *Prescott v. Argen Corp.*, No. 13 CV 6147, 2014 WL 4638607, at *7 (N.D. Ill. Sept. 17, 2014) (plaintiffs did ***not*** charge their patients for the crowns). Here, patients are currently exposed to liability for the interest that Defendants refuse to pay. Forcing Defendants to pay what they are obligated to pay eliminates this liability, thus serving the interests of patients. Further, Defendants' scheme harms patients with increased costs and decreased access to care.

Defendants' last gasp highlights a self-absorption that apparently knows no bounds. They argue that making them pay what the legislature and DOI told them they have to pay would actually harm the employees that they expose to liability by not paying. ECF 224 at 40. There is no harm in threatening a deadbeat company with consequences if they continue to throw their bills in the trash. And there is certainly nothing detrimental to consumers in doing so.

Defendants threaten to increase insurance premiums if this Court denies their motion to dismiss. ECF 224 at 40. This highlights the seriousness of the consumer interests at issue here. Defendants threaten to increase costs if they have to pay interest whereas Defendants' ongoing scheme increases costs by undermining the public policy of the IWCA. Defendants apparently see this as a win-win for the insurance industry and a lose-lose for the citizens of Illinois, but making Defendants pay what they are legislatively, administratively, and contractually obligated to pay

serves the interests of consumers by ensuring that consumers don't have to pick up the tab but do have access to quality healthcare.

### B. Dr. Beatty States a Plausible Unfair Practices Claim

Defendants finally address Dr. Beatty's actual ICFA claim, but they continue to misstate the law. Defendants represent that Dr. Beatty must plead the elements of a deceptive practice claim. ECF 224 at 30 (citing *Avery* and *Geschke*). Under settled Illinois law, however, a "plaintiff may allege that conduct is unfair under the Consumer Fraud Act without alleging that the conduct is deceptive." *Mosiman v. BMW Fin. Servs. NA, Inc.*, 748 N.E.2d 313, 317 (Ill. App. Ct. 2001); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

When determining if a plaintiff has pled an ICFA claim for unfair practices, the following factors are considered: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008). "All three criteria do not need to be satisfied to support a finding of unfairness." *Robinson*, 775 N.E.2d at 961. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* "[W]hether a practice is unfair depends on a case-by-case analysis." *Siegel*, 612 F.3d at 935. "Because neither fraud nor mistake is an element of unfair conduct under Illinois Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City*, 536 F.3d at 670.

"The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition and

other unfair and deceptive business practices. ***It is to be liberally construed to effectuate its purpose.***" *Robinson*, 775 N.E.2d at 961 (emphasis added).

Dr. Beatty's claim meets each factor to such a degree that Defendants' Motion can be denied on the basis of any of the three. Taken together, liberally construed, and given the benefit of every reasonable inference, Dr. Beatty's Complaint is unassailable.

### 1. Defendants' Conduct Offends Public Policy as Expressed by the Legislature in the IWCA and the DOI in its directive to Defendants.

Dr. Beatty relies on three distinct expressions of public policy: 1) the will of the legislature set out in IWCA that Defendants pay interest, 2) the policy and understanding of the Department of Insurance set out in its directive to Defendants advising them to pay interest, and 3) Defendants' insurance policies, which are required by the IWCA to include coverage for the entire liability of their insured. Defendants spend most of their Motion arguing that Section 8.2(d) does not obligate them to pay interest. Even if that were true—and it is not, as made clear when the IWCA is read as a whole and Section 8.2(d) is not improperly isolated—Defendants cannot defeat Dr. Beatty's claim because their scheme offends public policy by not complying with the DOI directive and not complying with their own policies that require them to pay interest. Moreover, even if Defendants could contradict all three expressions of public policy, that would not be enough to defeat Dr. Beatty's claim, because he need not satisfy all three factors. *Robinson*, 775 N.E.2d at 961.

Public policy may be expressed in a statute or "the common law or otherwise, or in other words, whether it is at least within the penumbra of some established concept of unfairness." *Boyd*, 787 F. Supp. at 752. Additionally, "[v]iolations of agency directives like these can be the hallmark of unfairness under the ICFA." *Boyd*, 787 F.Supp.2d at 753. Consequently, Defendants' failure to follow the DOI directive is a separate basis on which to predicate this unfairness claim.

The Illinois legislature first codified an interest provision in the 2005 amendments to the IWCA. It required that medical providers receive interest when paid more than 60 days late. P.A. 94-277, §10, eff. July 20, 2005. The 60-day period was reduced to 30 in 2011. P.A. 97-18, § 15, eff. June 28, 2011. "In case of nonpayment to a provider within 30 days of the receipt of the bill…the bill, or portion of the bill, shall incur interest at a rate of 1% per month, payable to the provider. Any required interest payment shall be made within 30 days after payment." §8.2(d)(3).

Defendants argue the statute puts the onus on the employer—their insured—to pay. In doing so, Defendants fail to mention that the IWCA requires insurers to cover the entire liability of the insured. The IWCA clearly states that Defendants have ultimate responsibility to pay: "Every policy . . . shall cover . . . the entire compensation liability of the insured . . . *[and] [i]n the event the employer does not pay . . . then an insurance company . . . shall become primarily liable*." 820 ILCS 305/4 (emphasis added). Defendants ignore this section of the IWCA, which obligates insurers, not their insureds, to pay interest.

"Defendants systematically and routinely fail and refuse to make these interest payments due doctors as required **by the statute**." ECF 1 at ¶ 5 (emphasis added). Dr. Beatty unequivocally pled sufficient facts to show Defendants' conduct offends public policy and the degree to which it offends those policies. They have done so with impunity and with no fear of consequences as demonstrated by their threat to raise premiums if forced to obey the law. And they will continue unless enjoined. These facts show that Defendants' conduct offends public policy to the highest degree possible, which is alone sufficient to state an ICFA unfair practice claim.

Defendants' conduct also offends public policy in a related, but distinct, manner:

**NOTIFICATION TO MAINTAIN COMPLIANCE WITH THE INTEREST PROVISIONS CONTAINED IN 820 ILCS 305/8.2(d)(3).**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

> **The purpose of this bulletin is to advise all insurance companies and claims administrators who adjust workers' compensation claims in Illinois of their duty to comply with the aforementioned statutory requirements.**

ECF 244-2, https://insurance.illinois.gov/cb/cb2012.html. This government agency directive is an expression of public policy. "Violations of agency directives like these can be the hallmark of unfairness under the ICFA." *Boyd*, 787 F.Supp.2d at 753. Defendants' flat out refusal to comply with a direct order from a regulatory body is a separate ground for finding the first factor met. Defendants refused, and continue to refuse, to comply with the DOI. The Complaint sufficiently pleads an ICFA unfair practices claim based on this fact alone. The Court may take judicial notice of this government document. *Waller v. Randle*, No. 10-cv-495, 2011 WL 2149081, n.2 (S.D. Ill. May 31, 2011). However, Plaintiff seeks leave to amend the Complaint if the Court deems it necessary to specifically describe or attach this bulletin in order to allege an unfair practices claim.

Defendants contend that failure to pay interest is not actionable because it is a "breach of a contractual promise, without more." ECF 224 at 41 (*citing M.W. Widoff*, *Avery*, *Greenberger*, *D.M. Robinson Chiropractic*, and *Roche*). Each cited case involved a ***deceptive practices*** claim (i.e. fraud/misrepresentation) based on a failure to fulfill a contractual promise. Defendants again conflate the two separate ICFA claims. A "plaintiff may allege that conduct is unfair under the Consumer Fraud Act without alleging that the conduct is deceptive." *Mosiman*, 748 N.E.2d at 317. More importantly, the Complaint alleges unfair practices that violate public policy expressed by the legislature, not a breach of contract. Furthermore, unfair practices involving insurance claims are covered by the ICFA. *Elder v. Coronet*, 558 N.E.2d 1312, 1320 (Ill. App. Ct. 1990) ("[The adjuster] and [the insurance carrier] are incorrect in asserting that the processing of insurance claims is not covered by the Act.").

Next, Defendants argue Dr. Beatty's claim fails because the IWCA "is not one of the enumerated statutes that, if violated, would constitute an unfair practice within the meaning of the ICFA." ECF 224 at 43. This is false. *See Boyd*, 787 F.Supp.2d at 752-55 (holding plaintiff stated an ICFA claim based on violation of the Home Affordable Modification Program); 815 ILCS 505/2Z (Home Affordable Modification Program, part of the Emergency Economic Stabilization Act of 2008, is **not** enumerated in section 2Z). Even if that were the law, Defendants' failure to abide by the DOI bulletin and their own policies is another, independent basis that their ongoing scheme violates public policy.

Defendants overstate the holdings in their cited cases, which stand only for the proposition that a violation of an unenumerated statute does not ***automatically*** state an ICFA claim. *People ex rel. Daley v. Grady*, 548 N.E.2d 764, 765 (Ill. App. Ct. 1989) ("The sole issue presented for review is whether a business practice, which if violative of public policy as established by the Real Estate License Act, would automatically constitute a violation of the Consumer Fraud Act."). Defendants' argument has been universally rejected. *Ry. Devices Corp. v. Lusida Rubber Prod., Inc.*, 2006 WL 1697119, at *3 (N.D. Ill. June 13, 2006) ("Although a TCPA violation is not a listed violation of the ICFA, this by itself merely requires that [plaintiff] independently state a claim under the [ICFA]."); *Whittler v. Midland Funding, LLC*, 2015 WL 3407324, at *2 (N.D. Ill. May 27, 2015) ("[Plaintiff] may independently state an ICFA claim if all the elements of that claim are sufficiently pleaded even if a violation of the FDCPA does not automatically give rise to a violation of ICFA."); *Mehra v. Law Offices of Keith S. Shindler Ltd.*, 2015 WL 1996793, at *2 ("While a violation of the FDCPA is not a per se violation of the ICFA, the same practice can violate both Acts.").

In *Martis*, the court considered whether the plaintiff stated an ICFA claim based on a violation of the Medical Practice Act. *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 603-04

(Ill. App. Ct. 2009). After finding such a statutory violation did not automatically violate the ICFA, the court *separately* analyzed whether the alleged conduct stated an ICFA unfairness claim. *Id.* The fact that the IWCA is not listed in section 2Z simply means this Court must analyze the three unfairness factors. As the Complaint overwhelmingly meets all three factors, even though only one is required, Dr. Beatty stated an unfair practices claim.

Defendants regurgitate the same narrative that their conduct does not violate the IWCA. ECF 224 at 44-45. But failing to pay interest does violate the IWCA. 820 ILCS 305/4 ("Every policy . . . shall cover . . . *the entire compensation liability of the insured* . . . [and] [i]n the event the employer does not pay . . . then an insurance company . . . *shall become primarily liable*.") (emphasis added); *see also* ECF 244-1; 244-2. Defendants also recycle the argument that Dr. Beatty cannot bring an ICFA claim because providers do not have a private right of action to bring an IWCA claim. That argument has been explicitly denounced. *Boyd*, 787 F. Supp. 2d 747 at 752 ("[A] plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations … that themselves do not allow for private enforcement.").

Finally, Defendants argue their violation of the IWCA cannot offend public policy because the IWCA was enacted for the benefit of employees, not medical providers. ECF 224 at 45. But that's exactly the point. Defendants—in violating the IWCA—open up employees to liability for Defendants' unpaid bills. 820 ILCS 305/8.2(e-20) ("Upon a final award or judgment . . . or a settlement . . . a provider may resume any and all efforts to collect payment from the employee . . . and the employee shall be responsible for payment of any outstanding bills for a procedure, treatment, or service rendered by a provider *as well as the interest awarded under subsection (d) of this Section.*"). The public policy underlying the IWCA is for the benefit of the employee. And

that's why Defendants' scheme, which saddles employees with the bills Defendants refuse to pay and increases costs while decreasing access to quality healthcare, offends public policy.

Defendants' conduct offends public policy to such a degree that Dr. Beatty has stated an ICFA claim on the basis of this factor alone.

### 2. Defendants' Conduct Is Immoral, Unethical, Oppressive, and Unscrupulous.

The second factor is met if the "defendant's conduct is 'so oppressive as to leave the consumer with little alternative except to submit to it....'" *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) (*quoting Robinson*, 775 N.E.2d at 961).

Pursuant to the IWCA, physicians tendering services to injured Illinois workers have a right to expect their bills paid in a timely manner and, if not, to receive interest. When Defendants avoid their statutory and contractual obligation by paying late and without interest, physicians are required to finance their treatment while the patients are exposed to liability for the unpaid bills. This is immoral, unethical, oppressive, and unscrupulous. Consumers (employees) have absolutely no choice in the matter. They cannot of their own accord become well and whole when sick and injured. The Defendants' conduct increases their prices, reduces the availability of providers, and leaves them liable for the unpaid bills. And there is nothing consumers can do about it.

In addition to the harm that consumers face, Dr. Beatty and other physicians treating this patient base are harmed. Some of the claims in the Complaint were paid more than two years after treatment was rendered. In many of these cases, Defendants signed Settlement Agreements in which they contractually agreed to pay medical charges pursuant to §8.2 of the Act. In others, the Illinois Workers' Compensation Commission ordered medical charges be paid pursuant to Section 8.2. Defendants still refused to pay interest. The consequence is that providers are deprived of

revenue that the legislature deemed necessary to maintain their practices, keep costs down, and provide patients access to quality care. It is hard to imagine a more immoral, unscrupulous practice.

Of all the misquotes and overstatements in Defendants' Motion, the greatest offense may be their cite to *Batson*. ECF 224 at 55. Defendants, citing *Batson*, tell this Court "This 'element is not satisfied if' ***the plaintiff*** 'can avoid the defendant's practice by seeking an alternative elsewhere." *Id.* (emphasis added to the words of Defendants' own invention). The actual quote, for the benefit of the Court, is "this element is not satisfied if ***a consumer*** can avoid the defendant's practice by seeking an alternative elsewhere." *Batson*, 746 F.3d at 833 (emphasis added); *see also Siegel*, 612 F.3d 932, 935 ("defendant's conduct must . . . be so oppressive that the consumer has little choice but to submit."). The consumers here—employees—don't have a choice about whether to submit to Defendants' unfair practices. These injured consumers must submit to increased prices, reduction in the availability of providers, and potential liability for Defendants' unpaid bills. They have no choice because the scheme permeates the workers' compensation system. Defendants do not pay interest to any provider. Everyone is impacted. Even if Defendants were correct on the law, physicians are left with no real choice in the matter other than to change professions and not care for injured Illinois employees.

Defendants' conduct leaves consumers with no choice. Accordingly, this is "immoral, unethical, oppressive and unscrupulous" behavior of the highest degree, and it justifies denying Defendants' Motion on the basis of this factor alone. ECF 1 at ¶ 140.

### 3. Defendants' Conduct Causes Substantial Injury To Consumers

Although the Court in *Robinson* did not employ a test in determining substantial injury, some courts have found the Connecticut Supreme Court's test instructive. *Siegel*, 612 F.3d at 935. An injury to consumers is substantial if it is 1) substantial, 2) not outweighed by any countervailing

benefits to consumers or competition that the practice produces, and 3) an injury that consumers themselves could not reasonably have avoided. *Id.*

The injury to consumers is substantial. The legislature made this clear by expressing the public policy behind the interest provision and the IWCA as a whole. Higher prices and reduction of access to quality healthcare are issues that substantially impact every Illinois employee who has been or may ever be part of the workers' compensation system. Defendants would have this Court hold, as a matter of law without the benefit of discovery, that these injuries are not substantial. Defendants universally refuse to pay any interest, unfairly keeping untold hundreds of millions of dollars based on a loophole that the IWCA does not allow providers to bring a claim directly under the IWCA. *See* Exhibit 1 at 1 (estimation to Advisory Board "that tens or possibly hundreds of millions of dollars in unpaid interest exists" as of 2014). The ICFA incorporates the FTC's interpretations of § 5(a) of the FTC Act, 15 U.S.C. § 45(a). *See F.T.C. v. IFC Credit Corp.*, 543 F.Supp.2d 925, 942 (N.D. Ill. 2008); 815 ILCS 505/2. The FTC states that "[a]n injury may be sufficiently substantial . . . if it does a small harm to a large number of people." FTC Policy Statement on Unfairness, n.12, https://www.ftc.gov/public-statements/1980/12/ftc-policy-statement-unfairness. Here, Defendants' scheme does significant harm to every Illinois employee.

Not even Defendants are bold enough to argue the final two elements of the test. It is undisputed that Defendants' failure to pay interest provides no "countervailing benefits to consumers or competition," or that consumers' injuries are ones consumers could "reasonably have avoided." Thus, because the alleged injuries to consumers are unquestionably substantial, and the other two elements are uncontested, the Complaint sufficiently alleges substantial injury. Defendants have exposed consumers to untold millions of dollars in liability while simultaneously

causing increased healthcare costs and reduced access to quality healthcare. Defendants' Motion can be denied on the basis of the third factor alone.

## V.     DR. BEATTY STATES A CLAIM FOR INJUNCTIVE RELIEF

Defendants move to strike the request for injunction pursuant to Rule 12(f). "[M]otions to strike are usually discouraged because of their tendency to multiply the proceedings and prolong briefing." *Smith v. Bray*, 681 F.3d 888, 903 (7th Cir. 2012), *overruled on other grounds by Ortiz v. Werner Ent., Inc.*, 834 F.3d 760 (7th Cir. 2016). "The party moving to strike has the burden of showing that the 'challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial.'" *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003). "[M]otions to strike are disfavored." *Id.*

Defendants do not recognize their burden under Rule 12(f), nor do they attempt to meet their burden. Instead, Defendants argue that the request for injunctive relief be stricken for failure to plead any of the necessary elements." ECF 224 at 50. This is not a legally appropriate basis on which to strike a request for relief.

Once again, Defendants' case citations are inapposite. The plaintiffs in *Mullins* and *Kartman* were not entitled to an injunction because monetary damages were sufficient. *Mullins v. Direct Digital, LLC*, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011). Here, an injunction is appropriate because of the "real and immediate threat of future violations of their rights" and future violations of a statute. *Burton v. Hodgson Mill, Inc.*, No. 16-cv-1081, 2017 WL 1282882, at *7 (S.D. Ill. 2017 April 6, 2017) (quoting *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) *quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (finding that a plaintiff had standing to seek

injunctive relief against a hotel for potential Americans with Disabilities Act violations based on her upcoming trips to the hotel to visit nearby family)).

Further, it is undisputed that the ICFA allows for injunctive relief. "[W]here a statute expressly authorizes injunctive relief, a plaintiff need only show defendant's violation of the Act and that plaintiff has standing. *Illinois Bell. Tele. Co. v. Lake Cty. Grading Co.*, 728 N.E.2d 1178, 1181 (Ill. App. Ct. 2000). That is why the court in *Otero* struck a request for injunction due to lack of standing, not due to missing elements as Defendants suggest. ECF 224 at 50. Defendants' argument that the Complaint lacks any elements is legally and factually wrong. Nevertheless, it is undisputed that Defendants will continue their scheme unless enjoined. The Complaint alleges this and Defendants tout this fact in their Motion. ECF 1 at ¶ 143. Monetary damages are inadequate to remedy future violations of the law. Providers should not have to employ legal counsel to bring a class action every time Defendants fail to pay. To have to do so would mean they can never be made whole. On the other hand, there is no hardship on the Defendants by paying what they are required to pay by the IWCA, the DOI, and their own insurance policies. Finally, as the Complaint makes clear, Defendants' scheme substantially harm consumers, the class, future consumers, and future providers. Therefore, the public interest would undoubtedly by served by an injunction.

The message from Defendants in asking the Court to strike Dr. Beatty's request for an injunction to prevent their illegal scheme from continuing in perpetuity is loud and clear: even if the Court finds Defendants liable for failure to pay interest in the past, Defendants want protection from this Court for their admitted plan to continue the scheme in the future. In any event, Defendants fail to meet their burden under Rule 12(f) to demonstrate that Dr. Beatty's request for injunctive relief is "devoid of merit, unworthy of consideration, and unduly prejudicial." *Id.*

## CONCLUSION

Despite the dozens of issues raised by Defendants' Motion, the sole issue before the Court is whether Dr. Beatty has sufficiently plead an unfair practice claim under the ICFA. To do so, he simply needs to allege facts from which a reasonable inference can be drawn that 1) he has standing under the consumer nexus test, and 2) he can plausibly recover under an unfair practices theory. As detailed above, Dr. Beatty satisfies the consumer nexus test and alleges facts regarding all three *Robinson* factors and explaining the consequences of Defendants' ongoing, illegal scheme. Defendants' Motion should be denied.

DATED: February 7, 2018                    Respectfully submitted,

                                               By:    */s/ Benjamin R. Askew*
                                                      John G. Simon, #6195127
                                                      Kevin M. Carnie, Jr. #6298290
Benjamin R. Askew, #6291366
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101
jsimon@simonlawpc.com
kcarnie@simonlawpc.com
baskew@simonlawpc.com
Phone: (314) 241-2929
Facsimile: (314) 241-2029

Robert H. Wendt, *Pro Hac Vice*
The Wendt Law Firm
1015 Locust Street, Suite 1036
rwendt@wendtlawfirm.com
Phone: (314) 588-0097
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2018, I electronically filed Dr. Beatty's Memorandum in Opposition to Defendants' Motion to Dismiss Class Action Complaint with the Clerk of the Court for the United States District Court, Southern District of Illinois by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the Southern District CM/ECF system.

*/s/ Benjamin R. Askew*