**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MICHAEL E. BEATTY, M.D., d/b/a THE SOUTHWESTERN ILLINOIS PLASTIC & HAND SURGERY ASSOCIATES, individually and as the Representative of a class of similarly situated persons,** ) ) ) ) ) ) | |
| **Plaintiff,** ) ) | |
| **vs.** ) ) | Case No. 3:17-CV-01001-NJR-DGW |
| **ACCIDENT FUND GENERAL INSURANCE COMPANY, et al.,** ) ) ) ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Defendants in this matter have jointly filed a motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 223). Defendant Tristar Insurance Group, Inc. ("Tristar") joined in that motion, while also moving to dismiss the complaint as to Tristar specifically because no examples of the offending conduct were alleged against it (Doc. 239). Certain Defendants also filed a motion to dismiss based on the statute of limitations, as well as supplemental briefs explaining how the statute of limitations applies to claims asserted against them (Docs. 217, 218, 220, 221, 222, 226, 227, 228, 230, 231, 232, 233, 238). On March 5, 2018, the Court stayed discovery pending resolution of the motions to dismiss (*see* Doc. 260). For the reasons set forth below, the joint motion to dismiss for failure to state a claim is denied, while the motion to dismiss based on the statute of limitations is granted in part and denied in part. Defendant Tristar's motion to dismiss is also denied.

Plaintiff Michael Beatty, M.D., is an Illinois plastic surgeon who provides medical services to patients for work-related injuries (Doc. 1, ¶ 10). Defendants in this matter are insurance companies that have issued workers' compensation insurance policies covering Illinois workers, third party administrators (TPAs) employed by Illinois employers to administer workers' compensation claims, or claims adjusting companies (CACs) employed by insurance carriers or TPAs to administer workers' compensation claims (*Id.*, ¶ 11).

Dr. Beatty filed this putative class action on September 19, 2017, pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILL. COMP. STAT. 505.[1] Dr. Beatty alleges Defendants violated the ICFA by engaging in unfair practices related to the payment of interest due under the Illinois Workers' Compensation Act (IWCA), 820 ILL. COMP. STAT. 305 (Doc. 1). Specifically, Dr. Beatty claims Illinois physicians who render services to patients covered under the IWCA are entitled to receive statutory interest on their unpaid medical bills as set forth in 820 ILL. COMP. STAT. 305/8.2(d)(1-3) (*Id.*, ¶ 4). Yet, Dr. Beatty alleges, Defendants routinely fail and refuse to pay statutory interest (*Id.*, ¶ 5). Dr. Beatty claims these actions are part of a common scheme and conspiracy to deprive Illinois physicians of the payments to which they are entitled (*Id.*, ¶ 111). To achieve this objective, Dr. Beatty claims Defendants (1) send reimbursements for medical charges without including interest or an Explanation of Benefits (EOB) from which the physician can determine whether the payment includes interest; (2) send EOBs to physicians containing false information about when the request for reimbursement was received; (3) participate in

---

[1] This Court has federal subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this action involves a plaintiff and a defendant from different states, the amount in controversy exceeds $5,000,000, and the complaint alleges a proposed class of not less than 100 members.

trade associations that develop common industry standards and practices or act as vehicles for the exchange of sensitive business information; and (4) deliberately purchase software that does not recognize or calculate interest due (*Id.*, ¶¶ 112).

What's more, Defendants allegedly fraudulently concealed their requirement to pay interest by giving medical providers false and misleading information, thereby tolling the statute of limitations. To that end, Dr. Beatty asserts Defendants: (1) provide false or misleading information concerning the identity of the insurance carrier for the injured employee; (2) transmit EOBs containing false information regarding when Defendants received the request for reimbursement from a provider to make it look like the payment was timely; and/or (3) fail to give providers EOBs for claims concluded by settlement or a decision of an arbitrator or the Workers' Compensation Commission in an effort to keep providers from determining whether the payment is timely (Doc. 1, ¶ 139).

Dr. Beatty proposes a class defined as: "All Illinois physicians who, from July 20, 2005 to present, rendered medical services to an employee covered by the provisions of the Illinois Workers' Compensation Act and who were not paid interest as required by as 820 ILCS 305/8.2 (d)(1-3)." He seeks compensatory damages, punitive damages, declaratory or injunctive relief, pre- and post-judgment interest, and attorneys' fees and costs.

On December 15, 2017, Defendants moved to dismiss the complaint. Dr. Beatty filed timely responses in opposition to the motions to dismiss (Docs. 247, 248), and Defendants jointly filed reply briefs in support of their positions (Docs. 251, 252). Defendants also filed a notice of supplemental authority, to which Dr. Beatty responded (Docs. 263, 264). The Court heard oral argument on Defendants' motions to dismiss on April 11, 2018. Defendants filed a second notice of supplemental authority on May 1, 2018 (Doc. 267), and Dr. Beatty

responded to that too (Doc. 268). The Court has thoroughly considered all of the above in reaching its conclusions.

DISCUSSION

I.      **Motion to Dismiss For Failure to State a Claim**

Defendants argue Dr. Beatty has failed to state a claim for four reasons. First, insurers and TPAs have no duty to pay interest under the IWCA. Second, medical providers lack standing under the IWCA to sue insurers or TPAs. Third, Dr. Beatty cannot use the ICFA to circumvent the IWCA. And fourth, Dr. Beatty has not adequately pleaded the elements of an ICFA claim.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to "test the sufficiency of the complaint, not to decide the merits" of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). In evaluating a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Thompson v. Ill. Dep't. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must include a short and plain statement of the claim, showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). Accordingly, the Court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S. Ct. 1937, 1960 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). While a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). These requirements ensure that "the defendant [receives] fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (2007)).

### A.    Defendants' Duty to Pay Interest Under the IWCA

Dr. Beatty's ICFA claim presumes Defendants have a duty to pay interest under Section 8.2(d) of the IWCA, an obligation he claims they unfairly skirt. Defendants' first argument in opposition lays the foundation for many their arguments in support of dismissing the complaint. They claim the plain language of the IWCA simply does not require them to pay interest. If they are not required to pay interest, then Dr. Beatty cannot plausibly base a claim for violation of the ICFA on the alleged failure to do so.

Section 8.2(d) of the IWCA states:

> (d) When a patient notifies a provider that the treatment, procedure, or service being sought is for a work-related illness or injury and furnishes the provider the name and address of the responsible employer, the provider shall bill the employer directly. **The employer shall make payment and providers shall submit bills and records in accordance with the provisions of this Section**.
>
> > (1) All payments to providers for treatment provided pursuant to this Act shall be made within 30 days of receipt of the bills as long as the claim contains substantially all the required data elements necessary to adjudicate the bills.

(2) If the claim does not contain substantially all the required data elements necessary to adjudicate the bill, or the claim is denied for any other reason, in whole or in part, the employer or insurer shall provide written notification, explaining the basis for the denial and describing any additional necessary data elements, to the provider within 30 days of receipt of the bill.

(3) In the case of nonpayment to a provider within 30 days of receipt of the bill which contained substantially all of the required data elements necessary to adjudicate the bill or nonpayment to a provider of a portion of such a bill up to the lesser of the actual charge or the payment level set by the Commission in the fee schedule established in this Section, **the bill, or portion of the bill, shall incur interest at a rate of 1% per month payable to the provider**. **Any required interest payments shall be made within 30 days after payment.**

820 Ill. Comp. Stat. 305/8.2(d) (emphasis added). Defendants argue that because Section 8.2(d) says "[t]he employer shall make payment" and not "the employer *or insurer*," the responsibility for paying interest as required in Section 8.2(d)(3) falls solely on employers.

In response, Dr. Beatty contends Section 4(a)(3) of the IWCA requires insurance companies to cover the *entire* liability of the employer, including any interest due. Section 4.3(a)(3) states: "Every policy of an insurance carrier, insuring the payment of compensation under this Act shall cover all the employees and the entire compensation liability of the insured." 820 Ill. Comp. Stat. 305/4(a)(3). Thus, for an employer who has insured its workers' compensation liability with an insurance company (as opposed to being self-insured), the duty to pay interest falls on that insurance company.

Both parties recite familiar canons of statutory construction in interpreting the IWCA. Defendants point to the plain language of Section 8.2(d), which they argue imposes different obligations on insurers and employers. *Compare* Section 305/8.2(d) ("The employer shall make payment . . ."), *with* Section 305/8.2(d)(2) ("the employer or insurer shall provide

written notification . . .”). Defendants assert this is significant because a court may presume the legislature’s inclusion of a provision in one section and its omission in a parallel section is intentional. *See Bank of Am., N.A. v. Kulesza*, 14 N.E.3d 684, 688 (Ill. App. Ct. 2014). Meanwhile, Dr. Beatty argues the statute should be evaluated as a whole, with each provision construed in connection with every other provision. *See Bonaguro v. Cty. Officers Electoral Bd., et al.*, 158 Ill.2d 391, 397, 634 N.E.2d 712, 714 (Ill. 1994). That is, Section 8.2(d) must be construed in conjunction with Section 4(a)(3), which requires an insurer to cover the entire liability of the insured.

Under Illinois law, “the primary rule of statutory construction is to ascertain and effectuate the legislature’s intent.” *In re Robinson*, 811 F.3d 267, 269 (7th Cir. 2016). “The most reliable indicator of legislative intent is the language of the statute, which is to be given its plain, ordinary and popularly understood meaning.” *In re D.F.*, 208 Ill.2d 223, 229, 280 Ill.Dec. 549, 802 N.E.2d 800 (Ill. 2003). To determine a statute’s meaning, however, the court cannot confine itself to examining the provision in isolation, for “[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.” *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000) (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (“Ambiguity is a creature not of definitional possibilities but of statutory context”)). It is a “fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.” *Deal v. United States*, 508 U.S. 129, 132 (1993). “The terms in a statute are not to be considered in a vacuum.” *Corbett v. Cty. of Lake*, No. 121536, 2017 WL 5894189 (Ill. Nov. 30, 2017) (quoting *M.I.G. Investments, Inc. v. Environmental Protection Agency*, 122 Ill. 2d 392, 400, 523 N.E.2d 1

(Ill. 1988)). "Rather, the words and phrases in a statute must be construed in light of the statute as a whole, with each provision construed in connection with every other section." *Id.* (quotations omitted); *Metzger v. DaRosa*, 209 Ill. 2d 30, 37, 805 N.E.2d 1165, 1169 (Ill. 2004).

Only where the meaning of a statute is ambiguous after a reading of its plain language may a court look beyond the statute and consider its legislative history, including "the purpose and necessity for the law, the evils sought to be remedied, and goals to be achieved," as well as "the consequences that would result from construing it one way or the other." *People ex rel. Sherman v. Cryns*, 786 N.E.2d 139, 151 (Ill. 2003) (citations omitted); *Ultsch v. Illinois Mun. Ret. Fund*, 226 Ill. 2d 169, 181, 874 N.E.2d 1, 8 (Ill. 2007). "The court also presumes that the legislature "did not intend absurdity, inconvenience or injustice." *Id.*

Here, the plain language Section 8.2(d) of the IWCA, which requires an "employer" to make payment, must be read in conjunction both with those sections referencing "employer or insurer" and with Section 4(a), which allows an employer to insure its "entire liability" in an insurance carrier. When reading these provisions together, the language of Section 8.2(d) requiring an "employer" to make payment becomes ambiguous. *See Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 16 N.E.3d 801, 809 (Ill. App. Ct. 2014) ("A statute is ambiguous if . . . it is capable of being understood by reasonably well-informed persons in more than one manner."). If the legislature intended for insurers to pay interest, why did it only reference employer? On the other hand, why would it allow an employer to insure its entire liability but then require an employer to pay interest when an insurer fails to pay on time?

Because the statute is ambiguous, the Court turns to the purpose and necessity for the law and the goals sought to be achieved. In this case, the purpose of the IWCA in general

and Section 8.2(d) specifically is to promptly compensate employees for their injuries. This includes the interest provision of Section 8.2(d)(3). *See Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 83 N.E.3d 1027, 1035, *appeal denied*, 93 N.E.3d 1043 (Ill. 2017) ("direct payment obligations . . . **including the interest required to be paid by section 8.2(d)(3)**, are among the many other provisions in the Act designed to encourage the 'prompt' payment of compensation") (emphasis added). To effectuate that goal, if an employer has insured its workers' compensation liability in an insurer, then the *insurer* must be responsible for any interest accrued on late payments. An insurance company that believes only the *employer* is responsible for paying interest has no motivation to pay on time, thereby defeating the purpose of the IWCA and rendering the interest provision inconsequential. Furthermore, to conclude that only employers are responsible for paying interest would absurdly result in employers being penalized for insurers (to whom they already pay premiums) choosing not to timely pay providers for their work.

Defendants' argument that medical providers like Dr. Beatty must rely on employees to apply for an adjustment of claim to the Illinois Workers' Compensation Commission is similarly absurd and inconvenient. Although Defendants claim employees routinely seek to recover interest in "such proceedings," the cases Defendants cite to are examples of employees seeking statutory penalties under Sections 19(k) and (l) for unreasonable or vexatious delay of payment or intentional underpayment of compensation. Those penalties are paid directly to the employee. *See Johnson v. Great W. Cas. Co.*, No. 14 C 7858, 2015 WL 4751128, at *3 (N.D. Ill. Aug. 11, 2015) (discussing the additional compensation provisions of Sections 19(k) and (l)). An employee with a compensable injury has no incentive to attempt to obtain interest due to a provider under Section 8.2(d) from his or her employer, as

employees are never on the hook for paying interest. *See* Section 8.2(e) ("a provider shall not hold an employee liable for costs related to a non-disputed procedure, treatment, or service rendered in connection with a compensable injury").

This conclusion is also supported by the Illinois Department of Insurance's December 2012 Bulletin to all insurance companies and self-insured entities licensed and approved to provide workers' compensation coverage in Illinois (Doc. 244-2). The bulletin, cited by Dr. Beatty, is from Director of Insurance Andrew Boron and advises "all insurance companies and claims administrators who adjust workers' compensation claims in Illinois of their duty to comply" with the statutory interest provisions of Section 8.2(d). While the Court is not bound by the Illinois Department of Insurance's interpretation of the statute, it may be given "substantial weight and deference," as it "expresses an informed source for ascertaining the legislative intent." *Bonaguro v. Cty. Officers Electoral Bd.*, 158 Ill. 2d 391, 398, 634 N.E.2d 712, 715 (1994).

The Court is not persuaded that an Illinois appellate court's recent decision in *Marque Medicos* dictates a different result. *See Marque Medicos Fullerton, LLC*, 83 N.E.3d at 1035. In *Marque Medicos*, like in this case, the plaintiff medical providers sued the defendant insurance companies for making untimely payments without also paying interest. *Id.* at 1033. The plaintiff providers based their complaint on the theory that the IWCA's interest provision was incorporated into the standard insurance policies issued by defendants. *Id.* The plaintiff providers then claimed they were third-party beneficiaries of those contracts between the insurers and employers, that they had an implied private right of action under the IWCA, and that defendants breached an implied-in-fact contract. *Id.*

The First District appellate court disagreed with the providers and found they are not

third-party beneficiaries of the contracts between employers and insurance companies, as payment of necessary medical services is included among the total "compensation" or "benefits" owed by an employer to an *employee* suffering injuries arising out of and in the course of his employment. *Id.* at 1041. While providers might receive some benefit from the interest provision contained in Section 8.2(d)(3), the court held that the "direct payment obligations . . . **including the interest required to be paid by section 8.2(d)(3)**, are among the many other provisions in the Act designed to encourage the 'prompt' payment of compensation **by an employer or insurer** and to penalize any failure to make such prompt payment of compensation." *Id.* (emphasis added).

The *Marque Medicos* court also found that the defendant insurance companies had not breached any implied-in-fact contracts with providers. *Id.* at 1044. The providers had alleged the defendants agreed to directly pay the providers—including interest on late payments—in exchange for the providers' agreement to directly bill and communicate with defendants. *Id.* at 1043. Because the plaintiffs also had alleged in their complaints that defendants had a preexisting legal obligation to pay interest, however, and because consideration cannot flow from an act performed pursuant to a preexisting legal duty, there was no valid consideration and, thus, no implied-in-fact contract. *Id.* at 1044.

Finally, the court determined the plaintiffs had no implied private right of action under the IWCA. *Id.* at 1042-43. While the statute's interest provision provides "incidental benefits" to medical providers, "the fundamental purpose of the Act is to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Id.* at 1043.

Contrary to Defendants' assertion in this case, the Illinois appellate court did not hold

that insurers have no duty to pay interest under Section 8.2(d). Rather, the *Marque Medicos* court narrowly held that medical providers were not insureds or assignees under the defendants' policies, nor were they third-party beneficiaries. Thus, the plaintiffs' breach of contract claims failed.

Defendants here rely heavily on the *Marque Medicos* trial court order and its interpretation of Section 8.2(d). The trial court found that the IWCA language did not "expressly create[] a 'direct payment obligation' between the insurer and medical provider" because "section 8.2(d) clearly and unequivocally states, '[T]he provider shall bill the *employer*,' not the insurer, and that '[t]he *employer* shall make payment." *Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 2016 WL 716057, *3-4 (Ill. Cir. Ct. 2016). While Defendants claim the appellate court affirmed this holding, it is clear the appellate court believes there *is* a direct payment obligation between insurers and providers. *See Marque Medicos*, 83 N.E.3d at 1041-42. There, the appellate court stated: "**The direct payment obligations created by the 2005 and 2011 amendments to the Act**, including the interest required to be paid by section 8.2(d)(3), are among the many other provisions in the Act designed to encourage the 'prompt' payment of compensation by an ***employer or insurer*** and to penalize any failure ***to make such prompt payment of compensation***." *Id.* (emphasis added). Thus, the appellate court recognized that prompt payment of all compensation, including interest, is required by either an employer (if self-insured) or an insurer (if the employer contracts with an insurer).

On March 20, 2018, Defendants filed a supplemental brief to notify the Court that a bill was filed in the Illinois House of Representatives, HB4872, which would make two changes to the IWCA (Doc. 263). The bill would add language stating that a provider "shall

bill the employer <u>or its designee</u> directly" and that "the employer <u>or its designee</u> shall make payment for treatment directly to the provider in accordance with the provision so this Section." H.B. 4872, 100th Leg. (Ill. 2018). The proposed bill also provides that any required interest payments shall be made "by the employer <u>or its insurer</u> to the provider" and, if the employer or its insurer fail to make the required interest payment, the provider may enforce the provision directly against the employer, its insurer, or both. *Id.*

According to Defendants, this confirms that the legislature understands "full well" that a direct action against insurers is not allowed under the current statute. Defendants even point to the fact that Dr. Beatty has identified himself as one of the bill's proponents. Dr. Beatty counters that the proposed legislation only provides for a direct action under the IWCA, which has no bearing on this case considering he is bringing an ICFA unfairness claim.

Defendants overstate the importance of the proposed amendment. It is often stated that "[a]n amendment of an unambiguous statute indicates a purpose to change the law, while no such purpose is indicated by the mere fact of an amendment of an ambiguous provision." *Williams v. Staples*, 208 Ill. 2d 480, 496, 804 N.E.2d 489, 498 (Ill. 2004). "This canon reflects the commonsense notion that if a statute is ambiguous, a subsequent amendment will clarify the statute rather than change the law by replacing the intent of the enacting legislature with the intent of the amending legislature." *Ready v. United/Goedecke Servs., Inc.*, 232 Ill. 2d 369, 397, 905 N.E.2d 725, 741 (Ill. 2008) (Garman, J., dissenting).

Here, the Court has determined that Section 8.2(d) is ambiguous; therefore, the Court believes the amendment (if the bill passes) will serve to *clarify* what the legislature intended. In this case, that would mean the legislature indeed intended for insurers to be on the hook

for paying interest all along.

**B.      Medical Providers' Standing to Sue Under the IWCA**

Having determined that insurers have a duty to pay interest under the IWCA, the Court next turns to the issue of standing. Defendants argue Dr. Beatty lacks standing to bring an IWCA claim because "Illinois law does not allow a provider of medical care to sue a workers' compensation carrier." *Foster McGaw Hosp. of Loyola Univ. of Chi. v. Bldg. Material Chauffeurs, Teamsters & Helpers Welfare Fund of Chi., Local 786*, 925 F.2d 1023, 1024 (7th Cir. 1991). Defendants assert this rule stems from Section 4(g) of the IWCA, which names three classes of persons who can sue an employer's insurer: (1) "the employee," (2) the employee's "representative," and (3) the employee's "beneficiary." Furthermore, an insurer can only be sued "[i]n the event the employer does not pay" the compensation award, unless the employee, or his or her representative or beneficiary, joins both the employer and insurer in the same proceeding, in which case an award may be entered on a joint and several basis. Because the IWCA does not allow providers to sue insurers, Defendants argue, Illinois appellate courts "uniformly reject attempts by providers to sue insurers directly for claims under or relating to the IWCA." Defendants cite to several cases that purportedly hold that medical providers have no standing to sue workers' compensation insurers directly.

In response, Dr. Beatty asserts this argument is irrelevant, as he is not bringing an IWCA claim. The Court agrees. Dr. Beatty is not suing under the IWCA, so whether providers have standing to pursue direct claims against insurers under the IWCA has no bearing on this case. Further, Judge Easterbrook's statement in *Foster* that medical providers cannot sue a workers' compensation carrier was attributed to the section of the IWCA specifying who may recover *under the Workers' Compensation Act*. *Foster*, 925 F.2d at 1024; *see*

*also Roche v. Travelers Prop. Cas. Ins. Co.*, No. 07-CV-302-JPG, 2008 WL 2875250, at *3 (S.D. Ill. July 24, 2008) ("[T]he Seventh Circuit clarified [in *Foster*] that health care providers are not among those specified in the IWCA as being able to recover under the Act for damages for injuries. However, **this should not be taken to mean that workers' compensation carriers are immune to all suits from health care providers**.") (emphasis added). Dr. Beatty is not trying to recover under the IWCA; therefore, whether he has standing to sue under the IWCA is irrelevant.

**C.**     **Dr. Beatty's Use of the ICFA to Circumvent the IWCA**

Finally acknowledging that Dr. Beatty has pleaded an ICFA case rather than an IWCA case, Defendants next argue Dr. Beatty cannot use the ICFA to get around the IWCA. First, Defendants claim, the ICFA does not alter the rights available to a plaintiff under other statutes. Accordingly, if a plaintiff cannot state a claim under the IWCA, he also cannot state a claim under the ICFA. Second, Defendants assert the ICFA is not a vehicle for artful pleading of claims. Defendants ask the Court to look beyond the legal theory asserted—a consumer fraud action—to the actual conduct forming a basis for the claim—the failure to pay interest under the IWCA. Third, Defendants argue that federal courts should not recognize novel state law claims.

**i.**     *No Claim Pursuant to Underlying Statute*

Defendants first contend that Illinois courts uniformly dismiss ICFA claims when: (1) there is no private right of action under a particular statute, or (2) there is a private right of action, but the defendants' alleged conduct does not violate the statute.

Under the first approach, Defendants argue, if there is no private right of action under the IWCA, there can be no ICFA claim based on a purported violation of the IWCA.

Defendants cite *Overstreet v. CIT Mortg. Home Loan Trust*, No. 15 C 11709, 2017 WL 1022079, at *6 (N.D. Ill. Mar. 16, 2017), where the district court found that the plaintiff did not explain how she could use the ICFA, which provides a private right of action, to pursue a violation of the Residential Mortgage License Act ("RMLA"), which does not. Thus, the plaintiff's ICFA claim necessarily failed. *Id.* Likewise, Defendants argue, because providers have no private right of action under Section 8.2(d) of the IWCA, Dr. Beatty's ICFA claims must fail as well.

Under the second approach discussed by Defendants, an ICFA claim cannot be based on a violation of another statute if the alleged conduct does not violate that statute. So, because Section 8.2(d) does not require insurers to pay interest on late-paid claims (as Defendants have argued and the Court has rejected), and the IWCA prohibits providers from suing insurers directly, Dr. Beatty cannot rest his ICFA claim on alleged violations of Section 8.2(d).

In other words, Defendants argue that because Dr. Beatty lacks standing to sue insurers under the IWCA, and because insurers are not required to pay interest under the very statute upon which Dr. Beatty rests his claim, his claim must fail whether pleaded directly under the IWCA or indirectly under the ICFA.

In response, Dr. Beatty argues that the ICFA does not require an underlying private right of action. In *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Tr., Series 2003-1*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011), the Northern District of Illinois said that a plaintiff may prove an ICFA unfairness claim by showing that the challenged practice "offends public policy." *Id.* A practice can offend public policy "if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation." *Id.*

Under this standard, the court held, "a plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations . . . **that themselves do not allow for private enforcement**." *Id.* (emphasis added). Dr. Beatty argues that Defendants' ongoing and systematic scheme violates the IWCA and undermines public policy and, thus, is actionable under the ICFA. Further, at this stage, all that Dr. Beatty is required to do is give Defendants fair notice of the claim and the grounds upon which it rests and show that it is *plausible* that he is entitled to relief.

In reply, Defendants argue that *Overstreet* was decided after *Boyd* and thus bears more weight than *Boyd*. Further, in *Overstreet*, the court clearly stated that a plaintiff cannot use the ICFA to bring a claim for a violation of a statute (in that case, the Residential Mortgage License Act) that does not provide for a private right of action. The Court notes, however, that in *Overstreet*, the conduct at issue <u>did not violate the statute</u>, and the plaintiff cited to no other public policy the alleged conduct violated. *Overstreet*, 2017 WL 1022079 at *6. Here, however, failing to pay interest is *not* allowed by the IWCA and goes against the IWCA's public policy of prompt compensation for workers' compensation claims. Thus, the Court does not find *Overstreet* persuasive.

Because the ICFA *does not* require an underlying private right of action, and because Section 8.2(d) *does* require insurers to pay interest, Defendants' argument fails.

### ii.    *Artful Pleading/Novel State Law Claims*

Defendants' second and third arguments are similarly unpersuasive. While Defendants again assert that Dr. Beatty is merely trying to bring a direct IWCA claim under the guise of a consumer fraud action, Dr. Beatty counters that he is alleging Defendants are intentionally engaging in an illegal scheme to undermine public policy and avoid the

requirements of the IWCA. Based on the allegations in the complaint, the Court agrees Dr. Beatty is attempting to bring an ICFA claim.

Finally, Defendants assert that this Court should not expand Illinois state law to permit an ICFA claim to get around the IWCA's restriction on direct actions by medical providers. As noted by Dr. Beatty, however, there is nothing novel about asserting an ICFA claim in federal court. While the *subject* of the ICFA claim may be novel, that in itself does not preclude this Court from reviewing the claim.

### D.    Failure to State an ICFA Claim

Finally, the Court gets to the heart of the matter: whether Dr. Beatty has sufficiently pleaded the elements of an unfair practice claim under the ICFA.

"Illinois's Consumer Fraud Act is intended to protect consumers from unfair methods of competition and other unfair and deceptive business practices." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). To state a claim under the ICFA, a plaintiff must allege: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; and (4) the deceptive or unfair practice was the proximate cause of the plaintiff's actual damage. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005).

To constitute an "unfair practice" under the ICFA, the practice must (1) offend public policy; (2) be immoral, unethical, oppressive, or unscrupulous; or (3) cause substantial injury to consumers. *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 665 (7th Cir. 2008) (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)). "All three criteria do not need to be

satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961.

      **i.**    *Consumer Nexus*

Before analyzing whether Dr. Beatty has alleged the elements of an ICFA claim, the Court must consider the threshold question of whether Dr. Beatty is a "consumer." The ICFA defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILL. COMP. STAT. 505/1(e). Dr. Beatty concedes he is not a "consumer" under this definition. Instead, he asserts he satisfies the "consumer nexus" test. *See Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 738 (N.D. Ill. 2011).

"Because the statute's right of action is available to any person who suffers actual damage as a result of a violation, Illinois courts have interpreted the ICFA to apply not only in consumer-against-business cases but also in some cases when both parties to the transaction are business entities." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 822 (7th Cir. 2018) (citations and quotations omitted). While these cases are often premised upon a breach of contract, the ICFA is not limited to businesses who are consumers of each other's goods or services. *See Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 533, 546 N.E.2d 33, 40 (Ill. 1989). Instead, "where the dispute involves two businesses who are not consumers, the proper test is . . . whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Id.* at 41.

This test, referred to as the consumer nexus test, requires a plaintiff to show a "nexus

between the complained of conduct and consumer protection concerns." *Bank One Milwaukee v. Sanchez*, 336 Ill.App.3d 319, 324, 783 N.E.2d 217, 221–22 (Ill. App. Ct. 2003). "To plead a consumer nexus successfully, a plaintiff need only allege that the conduct complained of involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 777 (N.D. Ill. 2008) (citation and quotation omitted); *Walsh Chiropractic, Ltd. v. StrataCare, Inc.*, 752 F. Supp. 2d 896, 913 (S.D. Ill. 2010).

Here, Defendants focus on whether Dr. Beatty has alleged their conduct "implicates consumer protection concerns." Dr. Beatty argues the Court need not reach that analysis, as he has alleged Defendants' scheme involves trade practices directed to the market generally. Specifically, Dr. Beatty cites his allegations that Defendants systematically and routinely fail and refuse to pay interest on any late-paid or unpaid bill, thereby impacting every patient and provider in the entire Illinois healthcare market—that is, Defendants' scheme is directed to all of Illinois. At oral argument, Dr. Beatty further emphasized that the fundamental purpose of the IWCA is to protect and compensate employees—Illinois consumers—completely and promptly.

The Court disagrees that Defendants' scheme as alleged by Dr. Beatty is directed to the market generally. While the conduct may have repercussions for Illinois consumers, Defendants are not targeting the market generally. Rather, they are allegedly failing to pay medical providers and concealing their failure to do so by various means. *See Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 739–40 (N.D. Ill. 2011) (holding plaintiff did not allege defendants' false representations were directed toward the market generally when plaintiff alleged only that the false representations were directed toward it and other tile

installers).

Because Defendants' practices were not directed to the market generally, the alleged conduct must "implicate consumer protection concerns." To establish an implication of consumer protection concerns, Dr. Beatty must have pleaded: (1) actions that establish a link between him and consumers; (2) defendants' unfair practices concerned consumers other than himself; and (3) "how the requested relief would serve the interests of consumers." *Walsh Chiropractic, Ltd. v. StrataCare, Inc.*, 752 F. Supp. 2d 896, 913 (S.D. Ill. 2010) (quoting *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 298 Ill. App. 3d 146, 160, 698 N.E.2d 257, 269 (Ill. App. Ct. 1998)). "Requiring a connection between the requested relief and consumers is thus important because it ensures that non-consumers do not expand the Consumer Fraud Act beyond its intended purpose." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043 (N.D. Ill. 2017).

Dr. Beatty alleges Defendants' practices are detrimental to the health of his patients and to the welfare of the general public, and that their conduct deprives physicians of the funds they need to properly maintain their practices and to serve the public (Doc. 1, ¶¶ 2, 140). As explained by Dr. Beatty, doctors must finance their own practice while waiting for payment, leading to increased costs for patients in the State of Illinois. Dr. Beatty further argues that when insurance companies finally do pay, they do not include interest, which leads to fewer doctors agreeing to provide care to injured Illinois employees. Finally, Dr. Beatty alleges that the interest of consumers is served by requiring Defendants to pay contractually or statutorily mandated benefits.

Dr. Beatty likens his case to *Walsh*, where this district court found the plaintiff had sufficiently pleaded standing under the ICFA. *Walsh*, 752 F. Supp. 2d at 913. In that case, the

plaintiff alleged consumer protection concerns were implicated when the defendant employed a silent PPO scheme designed to damage "the integrity and viability of PPO networks" as well as the "businesses of all healthcare providers by unlawfully reducing the reimbursement of medical services below their reasonable value." *Walsh*, 752 F. Supp. 2d at 913. The Court acknowledged the plaintiff's inartful pleading, for PPO networks and healthcare providers obviously are not consumers for purposes of the ICFA. *Id.* Nevertheless, in his response to the defendant's motion to dismiss, the plaintiff explained that the scheme implicated consumer protection concerns because it exposed medical consumers to increased costs of medical treatment. *Id.* The Court found this to be a reasonable inference from the facts alleged in the complaint and held the plaintiff had sufficiently pleaded standing under the ICFA "by the slimmest of margins." *Id.*

Defendants argue *Walsh* is distinguishable because there is no way patients will be exposed to unpaid interest charges, as the IWCA does not allow providers to recover interest from employees. But, as explained by Dr. Beatty, doctors must finance their own practice while waiting for payment, leading to increased costs for patients. Defendants' claim that unpaid costs cannot shift to patients due to the IWCA's caps on fees ignores the reality that most doctors providing care to hurt employees also provide care to other, non-workers' compensation patients as well. Requiring insurance companies to pay on time—or else pay the interest mandated by statute—will encourage physicians to continue treating injured Illinois workers, ensuring consumers across Illinois have access to quality healthcare, by doctors who choose to participate in the workers' compensation system, at uninflated prices. The Court finds that Dr. Beatty has sufficiently alleged the implication of consumer protection concerns.

ii.    *Unfair Practice*

Defendants next argue Dr. Beatty's claim should be dismissed because Defendants did not engage in an unfair practice that is actionable under the ICFA.[2]

As stated above, the ICFA is intended to protect consumers, borrowers, and businesses against unfair and deceptive business practices and is to be liberally construed to effectuate its purpose. *Robinson*, 775 N.E.2d at 960. Whether a practice is unfair under the ICFA requires a case-by-case analysis. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). A practice is unfair if it (1) violates public policy; (2) is immoral unethical, oppressive, or unscrupulous; and (3) causes consumers substantial injury. *Id.*; *Robinson*, 775 N.E.2d at 961. A claim of unfairness need not satisfy all three criteria; however, the defendant's conduct must be the proximate cause of the injury. *Id.*

"[I]n general the public policy of the State of Illinois is gleaned from its statutes, judicial decisions, constitution, and the practices of its government officials. *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 771 (S.D. Ill. 2010) (citing *American Home Assurance Co. v. Stone*, 61 F.3d 1321, 1324–25 (7th Cir. 1995)). "[A] practice can offend public policy 'if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation.'" *Boyd*, 787 F. Supp. 2d at 752 (quoting *3525 N. Reta, Inc. v. FDIC*, 2011 WL 62128, at *6 (N.D. Ill. Jan. 6, 2011)). Under this standard, "a plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations . . . that themselves do not allow for private enforcement." *Id.*

Here, Defendants contend Dr. Beatty has failed to plead a violation of public policy

---

[2] Dr. Beatty only claims to have alleged an unfair practices claim, not a deceptive practice. Therefore, the Court only addresses Defendants' arguments with regard to their alleged unfair practices.

when he has no basis to bring an ICFA claim. In other words, Defendants return to their argument that because they have no responsibility to pay interest under the IWCA, they have not violated the IWCA, nor have they violated public policy. Moreover, even if the failure to pay interest was a matter of public policy, the IWCA was enacted to benefit employees who suffer workplace injuries, not the medical providers who treat such employees.

In response, Dr. Beatty argues that Defendants' violation of the IWCA, their refusal to comply with the Department of Insurance's directive advising them to pay interest, and their indifference to their own insurance policies, which provide coverage for the entire liability of their insureds, all demonstrate a violation of public policy. Dr. Beatty also agrees with Defendants that the IWCA was enacted for the benefit of employees—and employees are the ones ultimately hurt by Defendants' conduct by virtue of rising costs and decreased access to quality healthcare.[3]

Considering the Court has already found that insurers are obligated to pay interest under the IWCA, the Court also finds that Dr. Beatty pleaded facts sufficient to allege a violation of public policy when he alleged that Defendants failed to pay that interest (Doc. 1, ¶ 5). The Court further agrees that Defendants' argument that the IWCA was enacted to benefit employees and not medical providers cuts against them. Defendants' alleged refusal to pay interest as required by the IWCA, must them ultimately hurt employees if the statute is designed to fully—and timely—compensate them for their workplace injuries. *See Marque Medicos*, 83 N.E.3d at 1035.

---

[3] Dr. Beatty also claims that employees can be held responsible for the unpaid interest, citing Section 8.2(e-20) of the IWCA. However, Defendants argue, and the Court agrees, that this section only addresses employees' liability for medical services when a claim is deemed <u>non-compensable</u> under the IWCA.

Defendants' remaining arguments are unpersuasive. They argue Dr. Beatty cannot bring an ICFA claim for failure to pay interest because a "breach of a contractual promise, without more, is not actionable under the ICFA," quoting *M.W. Widoff, P.C. v. Encompass Insurance Company of America*, No. 10 C 8159, 2012 WL 769727, at *3 (N.D. Ill. Mar. 2, 2012). Therefore, Defendants aver, courts consistently dismiss ICFA claims against insurance carriers based on simple non-payment. But, as strenuously emphasized by Defendants in their citation to *Marque Medicos*, Dr. Beatty has no contractual relationship with the insurance carriers in this lawsuit. Thus, he has no contractual remedies available to him unlike the plaintiff in *M.W. Widoff*.

Defendants also assert that the claim must fail because it is not one of the enumerated statutes in Section 2Z of the ICFA that, if violated, constitutes an unfair practice. *See* 815 ILL. COMP. STAT. 505/2Z. As discussed by Dr. Beatty, however, numerous cases recognize that a plaintiff may independently state an ICFA claim if the elements are sufficiently pleaded, even if a knowing violation of the underlying statute does not automatically give rise to an ICFA violation. *See Whittler v. Midland Funding, LLC*, No. 14 C 9423, 2015 WL 3407324, at *2 (N.D. Ill. May 27, 2015); *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 260 F. Supp. 3d 965, 972 (N.D. Ill. 2017) (analyzing an ICFA claim under both Section 2Z and independently as an unfair practice); *W. Ry. Devices Corp. v. Lusida Rubber Prod., Inc.*, No. 06 C 0052, 2006 WL 1697119, at *3 (N.D. Ill. June 13, 2006) ("Although a TCPA violation is not a listed violation of the ICFA, this by itself merely requires that Western Railway independently state a claim under the Act.").

Because the alleged conduct here violates public policy, the Court need not consider whether Dr. Beatty has alleged Defendants' practices are immoral, unethical, or oppressive

or that the conduct causes consumers substantial injury. *See Johnson v. Allstate Ins. Co.*, No. 07-CV-0781-MJR-PMF, 2009 WL 3230157, at *8 (S.D. Ill. Sept. 30, 2009). Dr. Beatty has sufficiently pleaded an unfair practice.

### iii. *Causation and Materiality*

Defendants argue Dr. Beatty's failure to plead causation and materiality provide another basis for dismissal of the complaint. Defendants assert that to plead causation and materiality, Dr. Beatty must allege that he received a deceptive communication from a defendant and that he would have changed his conduct had he known of the concealed information. But Dr. Beatty is not bringing a deceptive practices claim. While he must plead causation, the only requirement is that he plead the unfair practice was the proximate cause of his injury. Construing the allegations in the complaint in the light most favorable to Dr. Beatty, he has sufficiently alleged that as a proximate result of Defendants' conduct, he and members of the proposed class have been caused to suffer losses by the denial of interest due to them—specifically, the "adequate and timely payments needed to maintain his practice" (Doc. 1, ¶¶ 2, 141). At this stage, the Court finds Dr. Beatty has sufficiently alleged the elements of an ICFA claim.

### E.  Injunctive Relief

Lastly, Defendants assert Dr. Beatty's request for injunctive relief should be stricken pursuant to Rule 12(f) for failure to plead any of the necessary elements. Defendants also assert that one of the elements for injunctive relief is irreparable harm, and Dr. Beatty has alleged he suffered money damages—i.e., an admission that his injury is not "irreparable."

In response, Dr. Beatty argues that Defendants have not met their burden under Rule 12(f) to show that the challenged allegations are unrelated to plaintiff's claim and therefore

unworthy of consideration. Dr. Beatty also avers that monetary damages are inadequate to remedy *future* violations of the law.

Federal Rule of Civil Procedure 12(f) governs whether to strike matters from a pleading. Under Rule 12(f), upon a motion or upon its own initiative, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court should not strike matter from a pleading pursuant to Rule 12(f) "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *See* 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed.); *Anderson v. Bd. of Educ. of Chi.*, 169 F. Supp. 2d 864, 867-68 (N.D. Ill. 2001). The burden on a motion to strike is upon the moving party. *See Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028 (N.D. Ill. 1998).

Motions to strike are generally disfavored. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). For this reason, this Court and others have held that a party must show prejudice to succeed on a motion to strike. *See, e.g., Anderson*, 169 F. Supp. 2d at 867; *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Prejudice exists where the allegation confuses the issues or is so lengthy and complex that it puts an undue burden on the opposing party. *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997).

Here, Dr. Beatty alleges in the complaint that a money judgment would only compensate members of the class for past losses; it will not prevent Defendants from continuing to refuse to pay interest (Doc. 1, ¶ 114). He also asserts that no individual doctor has an adequate remedy, either administratively or at law, to recover these future losses,

that the costs of pursuing such claims far exceeds the amount at issue for each individual doctor, and that litigation such as this class action is a significant undertaking that cannot be mounted on a regular basis (*Id.*, ¶¶ 115-17). Where multiple lawsuits are required to redress repeated statutory violations, Dr. Beatty alleges, there is no adequate remedy at law and irreparable harm exists (*Id.*, ¶ 118).

Based on these allegations, the Court finds Dr. Beatty has stated a claim for injunctive relief. The fact that Dr. Beatty seeks money damages for Defendants' past conduct does not preclude him from seeking injunctive relief for Defendants' future conduct for which the class members would have no adequate remedy at law. Defendants' request to strike Dr. Beatty's request for injunctive relief is denied.

## II.     Motion To Dismiss Based On The Statute Of Limitations

Certain Defendants also have moved to dismiss any claims that fall outside of the three-year statute of limitations provided by the ICFA. 815 ILL. COMP. STAT. § 505/10a(e). Specifically, Defendants assert: (1) all claims accruing before September 19, 2014, are time-barred; (2) all interest-payment claims accrued 30 days after payment was made for the alleged medical services; (3) the discovery rule did not delay accrual of any of these claims; and (4) Dr. Beatty's fraudulent concealment allegations, which were inadequately pleaded, provide him no excuse for failing to file his claims within the limitations period (Doc. 219). In sum, Defendants assert all claims against all Defendants accruing before September 19, 2014, are time-barred and should be dismissed.

Dr. Beatty argues his complaint is not limited to the "examples" he lists. While those examples are representative of Defendants' conduct, his allegations are not limited to certain instances in the past where Defendants did not pay interest. Rather, his claim is that

Defendants never paid interest in the past, they presently are not paying interest, and they never intend to pay interest in the future. Even if certain offenses are outside the limitations period, Dr. Beatty seeks both monetary damages for those injuries that are compensable, as well as to enjoin Defendants from future unfair practices.

The statute of limitations is an affirmative defense, and a plaintiff is not required to anticipate and plead around affirmative defenses. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). "Complaints need not contain any information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Hence, the statute of limitations "is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir.2004). However, if a plaintiff pleads himself out of court by admitting "all the ingredients of an impenetrable defense," dismissal is appropriate. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). "When reviewing a Rule 12(b)(6) dismissal of state law claims based on a statute of limitations, we apply state law regarding the statute of limitations and 'any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel.'" *Indep. Tr. Corp.*, 665 F.3d 930, 935 (quoting *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010)).

Here, Dr. Beatty's complaint includes "examples" of instances in which all Defendants (except Tristar) failed to pay him statutory interest due on medical services he provided to workers' compensation patients (Doc. 1, ¶ 107). The treatment dates in the examples range from March 26, 2007, to November 11, 2016 (*Id.*). The Court agrees with Dr. Beatty that these examples are merely representative of his allegations against Defendants and do not limit his claims to those instances. Dr. Beatty has alleged an unlawful scheme that

continues to this day. *See Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 826-27 (N.D. Ill. 2013). Through discovery, Dr. Beatty may uncover many more specific instances where Defendants were required to pay interest but did not.

Furthermore, Dr. Beatty has alleged that Defendants fraudulently concealed certain information, thereby tolling the statute of limitations. Through discovery, Dr. Beatty may uncover evidence to further develop his fraudulent concealment claims, which may further support the tolling doctrines he asserts in this case—or maybe not. Either way, the Court finds that dismissal at this point on statute of limitations grounds would be premature. Any such arguments are better suited for summary judgment after the factual record is developed. Accordingly, the Court denies Defendants' motion in that it will not make a determination on the statute of limitations at this early stage of litigation. For the same reasons, the Court denies Defendant Tristar Insurance Group, Inc.'s Motion to Dismiss.

That leaves one last issue: Defendants' argument that Dr. Beatty's fraudulent concealment allegations are insufficient as pleaded. An unfair practices claim such as the claim brought by Dr. Beatty is typically governed by the more relaxed pleading standards of Rule 8. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("When a claim alleges an unfair practice, the relaxed pleading standards of Rule 8 do indeed govern."). Allegations of fraud, including those supporting tolling the statute of limitations, however, are governed by the heightened pleading requirements of Rule 9(b). *See id.* at 446-47 (citing *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements."). This means a plaintiff must plead "the who, what, when, where, and how"

of the allegedly fraudulent act. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Furthermore, when a plaintiff requests application of a tolling doctrine, "the complaint should distinctly state what the discovered fraud actually was and when the plaintiff discovered it, so that the Court may evaluate whether he could have discovered it through the exercise of due diligence." *Greer v. Bank One*, No. 01 C 7352, 2002 WL 1732366, at *3 (N.D. Ill. July 25, 2002), *aff'd sub nom. Greer v. Cty. of Cook, IL*, 54 F. App'x 232 (7th Cir. 2002)

"[B]ecause fair notice is the 'most basic consideration underlying Rule 9(b),' in a case involving multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994)). The Seventh Circuit has rejected complaints that "lump together" multiple defendants. *Id.*; *see also Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (rejecting complaint that lumped all defendants together and did not specify who was involved in what activity).

Here, Dr. Beatty claims "Defendants" fraudulently concealed their failure to pay statutory interest by "employing various tactics." While Dr. Beatty goes on to explain the details of those tactics, he does not include any information concerning which Defendant engaged in which allegedly fraudulent activity or when the allegedly fraudulent actions occurred. Because Dr. Beatty has lumped Defendants together, has failed to more precisely state when Defendants engaged in these allegedly fraudulent activities, and has provided no information on when he discovered the alleged fraud, the Court finds he has not pleaded fraudulent concealment with the required particularity. The Court gives Dr. Beatty leave to replead and cure this defect.

For these reasons, Defendants' Joint Motion to Dismiss for Failure to State a Claim (Doc. 223) is **DENIED**. Defendant Tristar Insurance Group, Inc.'s Motion to Dismiss (Doc. 239) is also **DENIED**. Defendants' Motion to Dismiss Based on the Statute of Limitations (Doc. 218) is **GRANTED in part and DENIED in part**. The complaint is **DISMISSED**, and Plaintiff is **GRANTED** leave to amend the complaint to state his fraudulent concealment allegations with particularity. Any amended complaint shall be filed on or before **August 2, 2018**. All Supplemental Motions to Dismiss Based on the Statute of Limitations filed by the individual Defendants are also **DENIED without prejudice**.

Finally, the discovery stay is **LIFTED**. The parties shall submit a proposed revised scheduling and discovery order to Magistrate Judge Wilkerson on or before **July 16, 2018**.

**IT IS SO ORDERED.**

**DATED:   July 2, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**